MARIA ROSARIO, Respondent, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION et al., Appellants, et al., Defendant.

First Department, June 3, 1982

APPEARANCES OF COUNSEL

*Edward F. X. Hart* of counsel (*Ronald E. Sternberg* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellants.

*Seymour L. Colin* of counsel (*Levine, Spitz & Melloni,* attorneys), for respondent.

### OPINION OF THE COURT

ASCH, J.

Plaintiff, Maria Rosario (Rosario) went to the emergency room of Lincoln Hospital commencing May 27, 1969, with a number of complaints. On December 6, 1969, she returned there, complaining of pain over both temporomandibular joints. (These connect the lower jaw to the temporal bone [skull] and are similar to a ball and socket. The jaw bone is called the mandible; the ball at the upper extremity of the mandible, which fits into the socket in the skull is called the condyle.) For the next two years and three months

various drugs were prescribed, wiring of the jaw was performed, a nightguard was employed and a denture was fitted which was adjusted from time to time.

On January 28, 1970, February 24, 1970, and August 31, 1971, a sclerosing drug known as Sotradecol was injected into the capsule of the tissue around her right condyle, and both condyles, respectively. This was done to cause scarring of the tissue under the belief that this scarring would tighten the capsules and prevent the condyle from slipping out.

Throughout this period Rosario complained of not being able to fully open her mouth and, of pain. There was some improvement opening the mouth in January, 1972, but since the pain continued, surgery was decided upon.

On February 29, 1972, the day before the surgery, she complained to Dr. Miller that she could not open her mouth and he noted (in the hospital record) that her limitation had a psychological component and was not a true physical condition. On March 1, 1972, her right side was operated on.

Dr. Cheris, called by the defendants, testified that he removed the disc, the capsule and part of the condyle and inserted a silastic block to fill the space between the condylar stump and the fossa of the temporal bone. The implant was kept in place by wires which went through the lower portion of the temporal bone. She was discharged on March 3, 1972. On March 15, 1972, the hospital record indicates a paralysis of Rosario's facial nerve. On May 11, 1972, a dysfunction of the left temporomandibular joint was noted. She was admitted to the Lincoln Hospital on July 17, 1972, and on July 19, 1972, a condylectomy, menisectomy and silastic implant were performed on the left side.

An infection developed at the site of the surgery and on October 18, 1972, further surgery was performed for removal of the sinus tract and revision of the scar. However, the infection did not clear up and continued to drain odorous pus for four months despite cauterizations at the hospital.

On March 24, 1973, the silastic implant, which was believed to be causing the infection, was surgically removed and the infection was eliminated. After all surgery was completed, Rosario found that the right side of her face was "dead", her headaches were more intense than before the operations, and eating was now more painful. She continued to go to the clinic.

The plaintiff called Dr. Joseph J. Marbach as her expert. He is a dentist whose practice was devoted to the diagnosis and treatment of temporomandibular joint disorders and since 1969 has been the Director of the Temporomandibular Joint and Facial Pain Clinic at Columbia University.

He had examined Rosario once in 1979 and once in 1980. He testified that the use of Sotradecol by the defendant was not in accordance with accepted medical practice, that it was used solely for the purpose of injection into the lower part of the body to destroy certain types of varicose veins. He stated that by 1969 it was recognized by experts treating temporomandibular joint disorders, if the drug were injected into the joint, it would erode the cartilage that covers the bone. He had never used the drug at all, and had formed this opinion from literature, including the Physicians Desk Reference (PDR). He testified further that both surgical procedures on the right and left side of Rosario's head were not in accordance with accepted medical practice, which he stated should have been either a benign treatment because of the psychiatric problems of Rosario, or dental manipulation to correct a possible incorrect bite. He did not agree with the latter treatment but found it acceptable. Neither course would have involved surgery.

In Dr. Marbach's opinion the treatment at Lincoln Hospital was a competent producing cause of permanent damage to Rosario's trigeminal and facial nerves. Abnormal movement of her jaw, restricted motion and her impaired ability to chew foods was also permanent and the pain in her joints would not improve.

Defendants produced three expert witnesses. One of them, Dr. Cheris, conceded that the manufacturer had advised that Sotradecol was to be used only for the therapy of varicose and internal hemorrhoids, that this was the

purpose for which the drug had been approved by the FDA and that to his knowledge, it had never been approved for dental purposes nor had the manufacturer ever recommended such use of Sotradecol in a package insert.

All three of defendants' witnesses were questioned by plaintiff's counsel concerning entries in the PDR. Pages of the 1965, 1970, 1971 and 1980 editions of the PDR were admitted into evidence.

In its charge, the court presented the jury with three questions: (1) whether the surgery was unnecessary and a deviation from sound medical practice; (2) whether the injection of Sotradecol was a deviation from accepted medical practice; and (3) whether Rosario gave informed consent. The jury found for plaintiff on the first two questions and for the defendants on the third.

The admission into evidence of the PDR pages was error because they were hearsay, and the cross-examination of defendants' experts on the PDR was error. Each of these errors requires a new trial.

The admission of the PDR was also prejudicial to the defendants in that the use of the Sotradecol and its alleged effect on plaintiff could be found by the jury to have necessitated the surgery.

There is no doubt that the PDR was admitted into evidence for the truth of what was contained therein and as such constituted hearsay. The cases cited by plaintiff to show that the PDR was not hearsay are all inapposite. In each of the cases cited, either the PDR was not admitted for the truth, i.e., the manufacturer of the drug was being sued, the issue, therefore, being what statements were made by the manufacturer in the PDR (see *Baker v St. Agnes Hosp.*, 70 AD2d 400), or no objection was made to the offer into evidence (see *Brown v City of New York*, 63 AD2d 635).

In this case, the issue regarding the Sotradecol was not what the manufacturer said concerning the drug, its use and possible side effects, but whether the injection into Rosario's joints was acceptable medical practice. The manufacturer's entry in the PDR was received into evidence for the truth, i.e., that the drug should be used for certain

medical problems and not for others, and should be administered in a certain way and not in any other. The inference that the jury was asked to draw from this evidence was that any deviation therefrom was not acceptable medical practice. In his summation, plaintiff's counsel stressed the deviation from the PDR as constituting unacceptable medical practice. The error was reinforced and compounded when the court told the jury: "If you find that the oral surgeons at Lincoln Hospital *deviated from the manufacturer's recommendations* and you find that *such deviation was a proximate cause of any injury* which Mrs. Rosario suffered as a result thereof, you will find in her favor as to her claim that the injection of sotradecol constituted professional negligence." (Emphasis added.)

There is sufficient evidence in the record to sustain a finding that the surgery was unnecessary. However, the strong possibility that the jury seized upon counsel's alternative suggestion of liability, i.e., that the injection of Sotradecol was a deviation from acceptable medical practice as evidenced by the PDR, so taints the jury's finding, that a new trial is necessary. The finding of liability on the issue of the drug injections results from prejudicial error mandating a new trial on all issues (*Brandt Corp. v Warren Automatic Controls Corp.,* 37 AD2d 563; *Schildhaus v City of New York,* 23 AD2d 409).

Accordingly, the judgment of the Supreme Court, Bronx County (CALLAHAN, J., and jury), entered against defendants-appellants New York City Health and Hospitals Corporation and Yeshiva University on December 29, 1980, upon a jury verdict in the sum of $350,000 should be reversed on the law and the facts and the matter remanded for a new trial with costs to abide the event.

KUPFERMAN, J. P. (dissenting). We dissent and would affirm.

The majority having found that there "is sufficient evidence in the record to sustain a finding that the surgery was unnecessary", the only issue on which we differ and on which the court erroneously has reversed and remanded, is as to the nature and function of the Physicians Desk Reference (PDR). The PDR is simply a compilation of the pocket inserts for a drug.

The manufacturers of a drug are required by statute (US Code, tit 21) and regulation (21 CFR — Food and Drugs), after appropriate investigation, see *Bichler v Lilly & Co.* (55 NY2d 571) to supply information respecting the formulation of the drug and instructions for the approved use of the product. The statute and regulation are, of course, matters of judicial notice (CPLR 4511).

The manufacturer's liability, if any, would be directly related to the adequacy of the information provided. (See *Wolfgruber v Upjohn Co.,* 72 AD2d 59, affd for reasons stated at App Div, Mr. Justice CARDAMONE 52 NY2d 768.) In this situation, the PDR showed that the use of Sotradecol as administered in this case was contra-indicated.

Under the circumstances, the PDR could not be considered hearsay but rather was a material and relevant condition inherent in the use of the drug. Further, the expert witnesses for the defendant having referred to the PDR, it was proper for it to be used on their cross-examination.

As was said by the Court of Appeals in the recent case of *Bichler v Lilly & Co. (supra,* pp 579-580): "Products liability law cannot be expected to stand still where innocent victims face 'inordinately difficult problems of proof' (*Caprara v Chrysler Corp.,* 52 NY2d 114, 123)."

By analogy, it is unfair to the plaintiff-respondent to attempt to prevent her from using the very basis for the origination of the drug involved as the standard against which the defendants must explain their course of action.

Ross and BLOOM, JJ., concur with ASCH, J.; KUPFERMAN, J. P., and LUPIANO, J., dissent in an opinion by KUPFERMAN, J. P.

Judgment, Supreme Court, Bronx County entered on December 29, 1980, reversed, on the law, and the facts, and the matter remanded for a new trial with costs to abide the event.