497 A.2d 630

**Carl SPOTTS & Florence Spotts, His Wife, Appellants,**

v.

**John S. REIDELL, M.D.**

Superior Court of Pennsylvania.

Argued March 11, 1985.

Filed Aug. 16, 1985.

38

Jay H. Feldstein, Pittsburgh, for appellants.

Grant H. Fleming, State College, for appellee.

Before TAMILIA, LIPEZ and BUCHER, JJ.*

TAMILIA, Judge:

This is an appeal from the Order of the lower court denying appellants' post-trial motions for a new trial and/or judgment n.o.v. We reverse and remand for a new trial on the basis that the lower court improperly admitted hearsay testimony which was substantially prejudicial to appellants' case.

The facts are as follows. In June of 1980, appellant, Carl Spotts, telephoned his family doctor, A. Reed Allison, Jr., M.D., after noticing blood in his stool. On July 1, 1980, Dr. Allison performed a direct visual examination of the appellant's rectum with a rigid sigmoidoscope. After noting that the bleeding was emanating from a polyp, Dr. Allison referred appellant to the appellee/defendant, John Reidell, M.D. Dr. Reidell examined appellant with a proctoscope and discovered a polyp in the posterior part of the rectum. (N.T. 534–35) Additionally, Dr. Reidell estimated the size of the polyp to be about two centimeters and stated that "[it] appeared flat. It had a sessile appearance. I could not see any stalk on it." (N.T. 534).

Dr. Reidell took multiple biopsies of the polyp and had them examined by a pathologist at Centre Community Hospital, who issued a tissue report with a diagnosis of "villous adenoma".[1] On July 7, 1980, appellant was admitted to Centre Community Hospital. A barium enema was administered and x-rays were taken. A retrolesion was diagnosed, approximately two centimeters in diameter, posterior in location, and about three or four centimeters above the

---

* Judge Wilson Bucher, Senior Judge, of the Court of Common Pleas of Lancaster County, Pennsylvania, is sitting by designation.

1. Dorland's Illustrated Medical Dictionary (25th Ed.1974) defines "adenoma" as a "benign epithelial tumor in which the cells form recognizable glandular structures or in which the cells are clearly derived from glandular epithelium." The term "villous adenoma" is specifically defined as a large soft papillary polyp on the mucosa of the large intestine. *Id.* at 37.

anus. No other lesions were found and nothing indicated whether the retrolesion was malignant or benign.

On July 9, 1980, Dr. Reidell performed a low anterior resection upon the appellant, which involved the surgical excision of six to seven inches of appellant's bowel. While still operating, Dr. Reidell sent the removed portion of appellant's bowel to the pathology laboratory and awaited the result. The resulting tissue report diagnosed a "villous-adenomatous colonic polyp with foci of atypia." This report also indicated that the polyp rested upon a pedicle (i.e., a stalk) and resembled a mushroom in form. Dr. Reidell then performed an anastomosis, which consists of attaching both ends of the bowel together.

Consequently, appellant experienced seepage of fecal matter from his rectum, resulting in his having to frequently change clothes and to use tissues and sanitary napkins.

Appellant suffered a constriction or tightness of his rectum where the bowel had been reattached for eleven months following surgery. As a result, approximately once every three weeks, Dr. Reidell would manually dilate this constriction with his fingers in an attempt to enlarge the opening in appellant's colon.

On May 26, 1981, appellant once again visited Dr. Reidell for a manual dilation of the rectal constriction. However, after this procedure was performed, appellant began to bleed from the penis. Subsequently, a urologist performed tests which indicated that Dr. Reidell, during the manual dilation, had caused a fistula (i.e., had punched a hole through the wall of the rectum and into the bladder). Immediately thereafter, a total colostomy was performed upon appellant. This procedure consists of the sewing of the colon to an opening in the wall of the abdomen. Specifically, the anus is bypassed and the feces pass through an abdominal opening. As a result of this operation, the appellant must permanently wear a colostomy bag, which collects fecal matter from the large intestine and requires constant changing.

On March 15, 1982, appellant brought an action in trespass against Dr. Reidell alleging medical malpractice. Appellant's suit alleged that Dr. Reidell fell below the medical standard of care when he elected to perform a resection of the colon instead of a snare wire polypectomy.[2] Appellant's expert, Dr. Richard Raizman, contended that had the snare wire procedure been utilized, appellant would have been spared all of the unfortunate complications which followed. Appellant also produced the expert testimony of Dr. Howard Reidboard, a pathologist, who stated that the medical term "villous adenoma" essentially refers to a benign, non-malignant tumor as opposed to a malignant, cancerous tumor.

Dr. Reidell, on the other hand, testified that the excision of appellant's bowel was justified due to the allegedly cancerous nature of the tumor. Dr. Reidell attempted to justify his decision by stating that the polyp was not pedunculated; therefore it was incapable of being removed safely with a snare wire cauterization.

The jury returned a verdict in favor of the appellee, Dr. Reidell. Appellant filed timely post-trial motions which were denied and this appeal followed.

The narrow issue before us is whether the lower court erred in permitting Dr. Reidell to testify that Dr. Velkoff, a pathologist, told him prior to the operation that the pre-operative biopsy specimen of the polyp indicated the presence of atypia. We find that the testimony relating to this out-of-court conversation was clearly hearsay as Dr. Velkoff was never present during the trial and was never confronted or cross-examined by the appellant. The lower court, however, admitted this testimony as a state of mind exception to the hearsay rule. The lower court noted that "[t]he conversation was not offered to prove the presence of atypia, but to explain why the surgical procedure was

2. In this procedure, the snare wire is passed through the colonoscope, looped around the polyp, and then tightened to remove portions of the polyp.

chosen." (Slip Op. at 2.) We disagree for the following reasons.

It is well-established that an out-of-court declaration constitutes hearsay if it is offered for the purpose of proving the truth of the matter contained in the declaration. *Carney v. Pennsylvania Railroad Co.*, 428 Pa. 489, 240 A.2d 71 (1968); *Klischer v. Nationwide Life Insurance Co.*, 281 Pa.Super. 292, 422 A.2d 175 (1980). *See* Fed.R.Evid. 801(c). However, an out-of-court statement is not hearsay when it is introduced purely for the purpose of establishing that the statement was made and not to establish its truth. *See, e.g., Baldino v. Castagna*, 308 Pa.Super. 506, 454 A.2d 1012 (1982); *Commonwealth v. Tselepis*, 198 Pa.Super. 449, 181 A.2d 710 (1962); *Wagner v. Wagner*, 158 Pa.Super. 93, 43 A.2d 912 (1945). Likewise, an out-of-court statement is not hearsay if it is offered to explain a course of conduct, *Commonwealth v. Cruz*, 489 Pa. 559, 414 A.2d 1032 (1980), or to reflect the declarant's state of mind. *Commonwealth v. Wright*, 455 Pa. 480, 317 A.2d 271 (1974). *See also*, McCormick, *On Evidence*, § 294–96 (3rd. Ed. 1984).

However, the problem here is that we are not concerned with the declarant's state of mind, but rather with Dr. Reidell's reliance on the medical opinion offered by Dr. Velkoff in their conversation. When questioned on direct examination regarding Dr. Velkoff's report, Dr. Reidell attempted to testify concerning an out-of-court conversation with the pathologist who authored the report:

Q. Now, did the pathologist give you a written report?

A. Yes, the following day I had a written report.

Q. Is this the report which is labeled Plaintiffs' Exhibit No. 2, which we have heard testimony about before?

A. Yes, that's correct.

Q. In addition to receiving this report, did you do anything to pursue the information that was on the report?

A. Yes. This confirmed my impression as I looked at it, my gross or microscopic impression, that this was a villous adenoma. In addition, I went to the laboratory

and spoke with Dr. Velkoff, who had read these slides that morning, and discussed this with him and reviewed the tissue with him. In our conversation there—(N.T. 542–43)

At this point, appellant's trial counsel raised a hearsay objection. After hearing arguments by counsel for both parties, the trial judge permitted Dr. Reidell to testify as follows:

A. He pointed out to me areas of atypia within this biopsy, which also agreed with what I would expect from what I had seen at the time of examining the tumor.

Q. Did you observe the tumor when you looked at it to be ulcerated?

A. Yes, micro-ulcerated, which is very small, irregular areas.

Q. And upon the pathologist's report of atypia, what did that indicate to you?

A. It confirmed my impression at that time that this tumor had a very high likelihood of being invasively cancerous.

Q. You also knew that it was a villous adenoma?

A. Yes.

(N.T. 546)

Viewing this testimony in the context from which it arose (i.e., a medical malpractice action), we would be hard-pressed to hold that it was elicited solely to show that a conversation occurred between Dr. Reidell and Dr. Velkoff or merely to reflect Dr. Reidell's pre-operative state of mind. In fact, we find that proof of the existence of a conversation between appellee and Dr. Velkoff is simply irrelevant and not a fact at issue in this case since the appellants have never contested the existence of this conversation.

Our careful review of the record convinces us that this hearsay testimony was offered for its substantive effect of proving the truth of the matters asserted therein (i.e., that the polyp had a high probability of being cancerous). This

is evident from the outset of the trial when Dr. Reidell's counsel, in his opening statement, made clear reference to this hearsay testimony for its substantive value.[3]

An instructive case concerning hearsay evidence in a medical malpractice action is *Rosario v. New York City Health & Hospitals Corp.*, 87 A.D.2d 211, 450 N.Y.S.2d 805 (1982). In *Rosario*, the plaintiff alleged that injections of a drug (Sotradecol) to treat her condition by oral surgeons constituted a deviation from accepted medical practice and that subsequent surgery for this same condition deviated from sound medical advice. The court held that it was error to admit into evidence pages from the Physicians Desk Reference (PDR) and to allow cross-examination of defendant's experts on these pages since the drug manufacturer's entry in the PDR was hearsay evidence. The *Rosario* court found that this hearsay evidence was received for the truth of the matters contained therein (i.e., that the drug should be used for certain medical problems and not for others, and that it should be administered in a certain way and not in any other). The court noted that the real issue involved "was not what the manufacturer said concerning the drug, its use and possible side effects, but whether the injection into Rosario's joints was acceptable medical practice." *Id.* at 214, 450 N.Y.S.2d at 807. The court noted that although there was sufficient evidence to sustain a finding that the surgery was unnecessary, the strong possibility existed that the jury's finding was tainted by the hearsay evidence. Consequently, the *Rosario* court held that this was so prejudicial as to mandate a new trial on all issues. We find the reasoning of *Rosario* to be

---

**3.** In his opening statement, appellee's counsel asserted that a finding of "atypia" was made in the pathologist's pre-operative tissue report:

> When the pathology report came back to Dr. Reidell, the pathologist reported that the tissue contained atypia cells, that the cells were abnormal. An atypia is an indication of a pre-cancerous condition in the nucleus of the cells. (N.T. 47)

However, as noted above, the pathologist's tissue report contained a diagnosis of "villous adenoma" and made no mention of the term "atypia", contrary to appellee's counsel's mistaken assertion. (N.T. 58–59)

dispositive of the issue before us. *See also, Denny v. Burpo,* 124 Ill.App.3d 73, 79 Ill.Dec. 520, 463 N.E.2d 1074 (1984) (patient developed vesicovaginal fistula due to negligent surgical procedure; lower court's admission of certain hearsay testimony of defendant/physician's expert witness during cross-examination was so prejudicial as to warrant a reversal); *Cummings v. Fondak,* 122 Misc.2d 913, 474 N.Y.S.2d 356 (1983) (hearsay evidence concerning material factual issue in medical malpractice action was offered for truth of matters contained therein).

Our concern is with the use of an out-of-court statement to prove an act or to explain conduct on the part of one other than the declarant when that act or conduct is itself the key issue in the case. Here, the particulars of the hearsay statement offered were of critical importance in the context of the issue being tried and the obvious implication resulting from this testimony is that Dr. Reidell's operative procedure was justified by reference to the cancerous potential of the polyp.

We are also concerned with the prejudicial impact of this testimony on appellant's case. As noted above, the jury had no opportunity to evaluate the credibility, qualifications or demeanor of Dr. Velkoff since he was not present during the trial, did not testify and was not cross-examined. The right to confront and cross-examine adverse witnesses is a cornerstone of our legal system. Moreover, "[t]he Hearsay rule, as accepted in our law, signifies a rule rejecting assertions, offered testimonially, which have not been in some way subjected to the test of cross-examination." 5 Wigmore, Evidence § 1362 (3d.ed.1940). Further, this right to cross-examination becomes even more crucial in situations like that before us where the testimony at issue originates from a physician since jurors, as lay persons, are often predisposed to accept the testimony of medical professionals due to its esoteric nature. This concern has been reflected in prior decisions of this Court which exclude the expert testimony of a physician who is unavailable "for in-court cross-examination regarding the accuracy, reliabili-

ty, and veracity of his opinion." *Commonwealth v. McNaughton*, 252 Pa.Super. 302, 307, 381 A.2d 929, 931 (1972) (citations omitted). *See also, Foster v. McKeesport Hospital*, 260 Pa.Super. 485, 394 A.2d 1031 (1978) (medical opinion of expert physician cannot be based soley upon the opinion of an out-of-court physician). While these cases deal with the exclusion of opinion testimony, we find them applicable here since Dr. Reidell, in discussing his conversation with Dr. Velkoff, was in effect referring to the opinion of an out-of-court expert medical witness.[4]

██ Appellee relies on *Commonwealth v. Thomas*, 444 Pa. 436, 282 A.2d 693 (1971), in which our Supreme Court held that a medical expert may express an opinion even though it is based, in part, upon the reports of others. Specifically, *Thomas* involved the appeal of a criminal conviction in which the appellant argued that the Commonwealth's expert psychiatrist relied upon written reports of other medical professionals as a basis for his opinion that the accused was sane. In concluding that such an opinion was admissible as an exception to the hearsay rule, the *Thomas* Court emphasized that the opinion was based "upon reports of others which are not in evidence, but which the expert customarily relies upon in the practice of his profession." *Id.*, 444 Pa. at 445, 282 A.2d at 698 (citations omitted). *See also Commonwealth v. Daniels*, 480 Pa. 340, 390 A.2d 172 (1978) (opinion testimony of forensic pathologist based on hearsay deemed admissible); *Commonwealth v. Wilson*, 245 Pa.Super. 415, 369 A.2d 471

---

**4.** The Opinion of the lower court rejected appellant's concern that the jury never was provided an opportunity to evaluate the credentials and credibility of Dr. Velkoff. The lower court held this concern to be immaterial since appellant chose not to investigate the credentials of Dr. Velkoff nor to bring him into court to testify. We disagree with the lower court's analysis and find appellant's failure to present testimony from the pathologist to be de minimis in the context of this case. The fact that the pathologist was not called to testify by the appellant does not give the defense carte blanche to use hearsay evidence substantively to prove the truth of the assertions therein. We find the prejudicial nature of this testimony to far exceed any hindsight analysis of what appellant should have done at trial as opposed to what actually happened.

(1976) (hearsay testimony regarding x-rays admissible where the physician customarily relied on such x-rays taken by others in the practice of his profession).

Quoting Professor Wigmore, the *Thomas* Court stated, " 'where the information is that of an attending nurse or physician having personal observations and an interest in learning and describing accurately, there seems to be every reason for admitting testimony based in part on this.' " *Thomas, supra* 444 Pa. at 445, 282 A.2d at 699. Here, however, the appellee produced hearsay evidence pertaining to a *conversation* he had with Dr. Velkoff to further justify the medical course of action he chose.[5] We find this use of hearsay evidence to far exceed the limited exception of *Thomas* (i.e., those reports customarily relied upon in the profession). Moreover, the *Thomas* Court further stated that "[e]rrors in ruling on evidentiary matters do not require reversal if the accused's rights have not been prejudiced." *Thomas, supra,* 444 Pa. at 446, 282 A.2d at 699. In the instant case, we find the impact of Dr. Reidell's testimony regarding his conversation with Dr. Velkoff to be highly prejudicial to appellant's case. Unlike *Thomas,* which merely recognized the general reliability of medical documents, the present situation involves the use of hearsay testimony to further explain, clarify or vary the information recorded in Dr. Velkoff's report.[6] As such, the

5. We find appellee's claim that the hearsay statement at issue had no relevance to appellant's theory of medical malpractice to be meritless. Throughout the entire trial, appellee referred to the cancerous nature of the polyp as justification for the ensuing surgery. In fact, on cross-examination, Dr. Reidell admitted that the conversation at issue played a significant role in his belief that the polyp was cancerous. N.T. 610. Thus, we refuse to conclude that the cellular composition was not relevant to how the polyp should be removed.

6. Appellee alleges that the conversation with Dr. Velkoff did no more than confirm his prior belief that the polyp was cancerous. While there was other evidence in the record to support this point of view, we are unable to conclude that the conversation with Dr. Velkoff did not taint the jury's verdict.

The instant case is also distinguishable from *Powell v. City of Philadelphia,* 311 Pa.Super. 526, 457 A.2d 1307 (1983) which allowed the testimony of a physician based on inadmissible hospital records. In allowing such testimony, this Court stressed that the physician

guarantees of reliability inherent in the facts of *Thomas* and its progeny are missing. Thus, we conclude that *Thomas*, a criminal case, is inapplicable to the facts of the medical malpractice action before us.[7]

■ Finally, we note that the trial judge failed to deliver curative instructions to the jury limiting the use of the hearsay testimony at issue to establish proof of the conversation or as reflecting appellee's state of mind and/or course of conduct. *See In re Leslie H.,* 329 Pa.Super. 453, 478 A.2d 876 (1984) (trial court failed to limit use of hearsay testimony to issue of daughter's state of mind). *See also, Commonwealth v. Wright, supra; Cummings v. Fondak, supra.* Since the jury was free to assess this testimony for its substantive value concerning the truth of the assertions therein, we conclude that this hearsay testimony was extremely prejudicial to appellant's case.

Accordingly, we reverse the Order entered March 21, 1984 and remand for proceedings consistent with this Opinion.[8]

Reversed and remanded. Jurisdiction relinquished.

noted in his testimony that his opinion would be the same even if he had not seen the hospital records. Here, we are not convinced that Dr. Reidell's course of action would have been the same notwithstanding the conversation he had with the pathologist prior to the operation. In addition, we emphasize that the hearsay conversation with Dr. Velkoff lacks the safeguards of reliability inherent in hospital records.

7. While *Thomas* has been applied to civil cases, *see Jumper v. Jumper,* 240 Pa.Super. 99, 362 A.2d 411 (1976); *Christy v. Darr,* 78 Pa.Commw. 354, 467 A.2d 1362 (1983), it has never been applied in a malpractice action against a defendant-physician whose hearsay testimony is at issue. Moreover, we emphasize that in the above cases, the hearsay testimony was proffered by a nonparty expert witness, unlike the situation in the instant case.

8. Appellant also argues that the lower court erred in improperly excluding appellant's proposed point for charge number 11. Since we have reversed and remanded on the basis of the lower court's having admitted prejudicial hearsay evidence, we need not discuss appellant's alternative argument.