597 A.2d 259

**Melanie CORSO, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (SOUTHWINDS, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 12, 1991.

Decided Sept. 6, 1991.

Reargument Denied Oct. 25, 1991.

332

---

John R. DeAngelis, for petitioner.
Joseph S. Weimer, for respondent.

Before DOYLE and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

Melanie Corso (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board) which affirmed the Referee's decision to grant Southwinds, Inc.'s (Employer) Petition to Terminate Claimant's workmen's compensation benefits.

Claimant was employed by Southwinds, Inc., as a direct care worker/resident advisor with moderately to severely mentally retarded adults. In that capacity, Claimant taught the mentally retarded adults living skills to cope in the outside world and also performed various household jobs in the home setting involving several adult clients. On March 22, 1988, while in the course of her employment, Claimant was standing on a couch adjusting a curtain when she fell backwards to the floor, striking her left lower back, her shoulder and her head. Liability for Claimant's injury was accepted by way of a Notice of Compensation Payable issued on March 30, 1988, pursuant to which Claimant began receiving workmen's compensation benefits in the amount of $262.09 per week.

On October 31, 1988, Claimant was examined for the Employer by Robert P. Durning, M.D., so that the Employer could determine whether Claimant was able to return to work and benefits could be terminated. Based on Dr. Durning's report following the examination, stating that there was no physical basis upon which he could recommend activity restrictions, the Employer filed a Petition for Termination of Compensation on December 7, 1988, alleging that Claimant could resume her normal activities without restriction as of October 31, 1988.

A hearing was held and medical testimony was given by Claimant's physicians, Manuel T. Martin, M.D. and Basil A. Marryshow, M.D., and the Employer's physician, Dr. Durning, regarding Claimant's ability to return to her normal

work duties. Dr. Martin testified that Claimant continued to be disabled and could not return to work, while Dr. Marryshow testified that Claimant could return to work, but only in a sedentary capacity and for no more than four hours a day. Dr. Durning, on the other hand, testified that Claimant could return to normal work without physical restrictions. After hearing all of the medical experts' testimonies, the Referee determined that the testimonies of Drs. Martin and Marryshow were equivocal and only Dr. Durning's medical testimony was "acceptable." The Referee concluded that the Employer had met its burden of proving that Claimant's workmen's compensation benefits should be terminated as of October 31, 1988. The Claimant appealed the Referee's decision to the Board which affirmed that decision. The Claimant then filed the instant appeal from the Board's decision.

▮ The issue now before us is whether the Referee's decision to terminate Claimant's benefits was supported by competent medical testimony. Additionally, we must consider whether the Referee's findings of fact were incorrect, inconsistent and ambiguous, and, if so, whether that indicates that the Referee failed to make a finding on a crucial issue, thereby requiring this court to remand for further fact-finding.[1]

▮ Claimant first contends that the Referee's decision to terminate her benefits was not supported by competent medical testimony, because Dr. Durning's testimony regarding Claimant's ability to return to work was based on hearsay testimony which was inadmissible. Specifically, Claimant argues that in determining that Claimant could return to her former job without restrictions, Dr. Durning relied upon a job analysis of Claimant's position authored by a vocational consultant who was not called to testify

1. *See Joseph Horne Company v. Workmen's Compensation Appeal Board (Gamble),* 15 Pa.Commonwealth Ct. 419, 327 A.2d 395 (1974), where this court held that where the fact finder fails to make a finding on a crucial issue, an appellate court can only remand to cure the error despite the unfortunate delay to the parties.

regarding that job analysis. As such, Claimant argues that the job analysis was hearsay and Dr. Durning's testimony should not have been the basis of the Referee's decision to terminate her benefits.

Hearsay has been defined as an out-of-court statement offered in court for the purpose of proving the truth of the matter contained in the statement. *Spotts v. Reidell,* 345 Pa.Superior Ct. 37, 497 A.2d 630 (1985). In this case, because the vocational consultant did not testify regarding the job analysis, the job analysis constituted hearsay. As such, the job analysis was comprised of "facts not of record" and was not the type of hearsay that could be admitted, because it was not related to the "expertise" of the expert, but instead, went to the factual core of the case. Consequently, it was not competent evidence upon which Dr. Durning could base his testimony or upon which the Referee could rely to terminate benefits.

■ However, at his deposition, Dr. Durning also had the opportunity to review Claimant's testimony regarding her job duties, which was made part of the record and was competent evidence. When Dr. Durning was asked after reviewing Claimant's testimony if there was anything in her testimony that would cause him to change the opinions he had rendered regarding her fitness to return to her previous job as a resident advisor, he unequivocally answered, "No." (N.T. at 172a–173a.) Finally, because Dr. Durning concluded that Claimant was no longer disabled based on his examination of her, he did not need to rely on either Claimant's testimony or the job description to determine that she could go back to her former job. Essentially, she could now perform any job that she was capable of performing prior to her injury. Therefore, we find that the Referee's determination to terminate Claimant's benefits was supported by competent medical testimony.

■ The Claimant further contends that Dr. Durning's testimony was equivocal as to whether Claimant could return to work, because he testified only that he would not

place any physical restrictions on her upon her returning to work, but not whether she could, in fact, return to work. However, our review of the record proves otherwise. When Dr. Durning was asked his opinion regarding Claimant's recovery or non-recovery from her injury based on his evaluation of Claimant and other diagnostic studies he reviewed, he responded, "I couldn't find any evidence of ongoing injury. I found no evidence of any lasting or permanent structural damage." (N.T. at 356a.) Further, after establishing that Dr. Durning had reviewed a formal job analysis of Claimant's former position, Dr. Durning was asked what conclusions he drew regarding Claimant's fitness or non-fitness for returning to work in her former position. He responded, "I didn't find any physical basis to keep her from working as a resident advisor." (N.T. at 356–357, 359.) Finally, when Dr. Durning was asked whether he thought, based on his evaluation of Claimant, that Claimant needed to be physically restricted in any way considering the type of injury she had sustained, he responded unequivocally, "No." (N.T. at 359a.) Dr. Durning testified unequivocally that Claimant could return to her former position without any restrictions, and, accordingly, we find that the Referee's decision to terminate Claimant's benefits was supported by competent medical testimony.

■ Claimant next contends that the Referee's findings of fact were incorrect, inconsistent and ambiguous, thereby indicating that he failed to make findings on a crucial issue. Specifically, Claimant argues that this case should be remanded for further fact-finding because Finding of Fact Number 7 is incorrect, as well as inconsistent with Finding of Fact Number 8. Findings of Fact Numbers 7 and 8 state the following:

7. It is found that the Defendant has offered to the Claimant a position similar to the one she held at the time of the accident. It is found that in this position, *there are duties within the Claimant's limitations.* (Emphasis added.)

8. Robert Durning, M.D., has given his deposition testimony for the defense on April 14, 1989. Dr. Durning is Board certified as an orthopedic surgeon. He examined the Claimant on one occasion, October 31, 1988. Following his review of medical documents which were sent to him and the Claimant, he opines that the *Claimant could return to work at her usual type of occupation.* We note the extensive objections voiced by Claimant's attorney, Guido DeAngelis, and without addressing each objection, the ruling that none of the objections are sustained is made. (Emphasis added.)

Claimant argues that at no time was testimony provided indicating that the Employer had offered her a similar position. The Claimant further argues that in light of the fact that the Referee relied on Dr. Durning's testimony to find that benefits should be terminated, Finding of Fact Number 7 is inconsistent with Finding of Fact Number 8, because number 7 stated Claimant had limitations, while number 8 stated Claimant could return to her normal occupation.

 In this case, both the Referee and Board accepted Dr. Durning's testimony as unequivocal as to Claimant's ability to return to work without limitations and we agree with that determination. Where the Referee and Board accept evidence which shows that the work-related disability has ceased, the Referee may terminate benefits without regard to the question of suitable work. *Frye v. Workmen's Compensation Appeal Board (Lafferty Trucking Company)*, 78 Pa.Commonwealth Ct. 427, 467 A.2d 659 (1983). Thus, even though the record reflects that Claimant was never offered suitable work by the Employer, such an offer was not necessary, because the Referee and Board found that Claimant was no longer disabled. Also, although Finding of Fact Number 7 is inconsistent with Finding of Fact Number 8, that inconsistency is harmless error, because Dr. Durning found Claimant could return to her normal job without restrictions, and the Referee and

Board adopted Dr. Durning's testimony in support of their decision to terminate Claimant's benefits.

 Claimant also argues that because Findings of Fact Numbers 8, 9, 10 and 11 are ambiguous regarding the quality of the doctors' testimonies, this court should remand the case for further fact-finding by the Referee.[2] Regarding the ambiguous quality of the testimonies upon which Findings of Fact Numbers 8, 9, 10 and 11 were based,

2. Findings of Fact Numbers 9, 10 and 11 provide the following:
9. Dr. Marryshow is Board eligible in orthopedic surgery. He has a sub-specialty which deals with disability evaluations and determinations. Additionally, he has boards in medical thermography. This doctor first saw the Claimant on December 5, 1988. This doctor opines following his examination of the Claimant that she could have sustained injuries to her spine as a result of the fall on March 2, 1988. He considers at that time that she has chronic traumatic cervical myosistis. With minimal degenerative changes to the cervical spine, she has degenerative arthritis of the dorsal spine and a degenerative arthritis of the lumbar spine with a bulging disk at L4–L5 with a very slight evidence of radiculopathy of the S1 nerve root. This doctor then opines that at that time she could not return to her previous occupation which could involve physically separating mentally retarded adults. This doctor did recommend that the Claimant return to work in a sedentary capacity for no more than four hours a day, this following his second examination of the Claimant on December 29. Dr. Marryshow saw the Claimant on several occasions, the last time being May 24, 1989. Having reviewed this deposition, the Referee is sustaining none of the objections. It is found that this doctor is quite equivocal in his opinions regarding the injury and the extent of activity that the Claimant may be engaged in, and therefore, this doctor's opinions are given little value.
10. Manuel T. Martin, M.D., has given his deposition testimony for the Claimant on April 27, 1989. He practices in both general surgery and a general practice. He is Board eligible as a general surgeon. This doctor has treated the Claimant and first saw her on March 4, 1988, following her injury of March 2, 1988. As of this doctor's last visit from the Claimant, April 12, 1989, he continues to opine that she is disabled from working. Again, this Referee is allowing all testimony of Dr. Martin to go in over the numerous objections placed by both attorneys. It is found from Dr. Martin's deposition that his opinions are most equivocal and little probative value is placed on his testimony.
11. Now having reviewed all medical evidence presented, it is this Referee's finding that the opinions expressed by Dr. Durning are most acceptable, and therefore, it is considered that the Claimant's work-related disability ceases as of the date of his examination of October 31, 1988.

Claimant specifically points out that the Referee did not state which part of the individual doctor's testimony was accepted and rejected, but instead, merely provided a simplistic summary of their testimonies and then found they were either equivocal or acceptable.

The law is well settled that while the Referee's findings of fact need not be so specific as to provide a thorough explanation of his thought processes, they must be sufficient to demonstrate that· the fact-finding function was performed and to permit the reviewing court to determine whether substantial evidence supports the conclusions reached. *Marcks v. Workmen's Compensation Appeal Board (City of Allentown, Dept. of Public Safety, Bureau of Fire)*, 65 Pa.Commonwealth Ct. 107, 442 A.2d 9 (1982). In *Marcks*, this court found that the Referee's findings of fact regarding medical testimony were not specific enough, because they merely summarized the medical testimony and did not expressly accept or reject any of that testimony. Regarding our inability to determine on what basis the Referee concluded that Claimant had failed to prove by sufficient competent evidence that he was totally or partially disabled due to exposure to the hazard of occupational disease in his employment, we stated the following:

> We agree with the Board that the medical evidence in this case is crucial. A review of that evidence reveals, however, that the Claimant's physician testified that the Claimant was disabled by obstructive lung disease, chronic bronchitis and probably emphysema, and that the Claimant's exposure to smoke during his employment was what caused the real problem. On the other hand, the Employer's physician testified that Claimant could no longer work as a firefighter, but that the cause of his lung problems was his smoking for forty years. *Neither the Board nor this Court can reason back from the Referee's conclusions to determine which medical testimony was accepted and which was rejected by the Referee in reaching his conclusions.* (Emphasis added.)

*Marcks*, 65 Pa.Commonwealth Ct. at 110–111, 442 A.2d at 11.

In this case, however, we do not have the problem raised in *Marcks*. Although the Referee summarized all of the doctors' testimonies to some degree in his findings of fact, we do not need to reason back to determine which testimony the Referee found to be equivocal or unequivocal. In Finding of Fact Number 9, the Referee specifically noted that Dr. Marryshow's testimony was "quite equivocal" in his opinions regarding the injury and the extent of activity that Claimant may be engaged in, and therefore, was given little value. Similarly, in Finding of Fact Number 10, the Referee specified that Dr. Martin's opinions were "most equivocal" and little probative value was placed on his testimony. Finally, in Finding of Fact Number 11, the Referee stated that after reviewing all of the testimony, the opinions expressed by Dr. Durning were "most acceptable" and Claimant's work-related disability ceased as of October 31, 1988, the date she was examined by Dr. Durning.[3] Therefore, we find that Findings of Fact Numbers 8, 9, 10 and 11 are not ambiguous and do not require that we remand this case to the Referee for further factfinding.

Accordingly, the decision of the Board is affirmed.

## ORDER

AND NOW, this 6th day of September, 1991, the order of the Workmen's Compensation Appeal Board, dated October 31, 1990, Number A90–485, is affirmed.

---

3. Claimant also argues that this case should be remanded for further factfinding because Finding of Fact Number 11 is ambiguous, as it does not make a finding as to credibility of the witnesses presented. However, because the Referee specified that he found Dr. Durning's testimony to be most acceptable or unequivocal, and terminated Claimant's benefits based on that testimony, the Referee, by implication, determined that Dr. Durning's testimony was credible.