**Ann M. PHILLIPS, Appellee,**

v.

**Clark D. GERHART, M.D., and Clark D. Gerhart, M.D., P.C., Appellants.**

Superior Court of Pennsylvania.

Argued April 17, 2002.
Filed June 5, 2002.

Lara A. Jones, Kingston, for appellants.

Carol A. Shelly, Doylestown, for appellee.

Before: JOYCE, BECK and POPOVICH, JJ.

POPOVICH, J.

¶ 1 This is an appeal from the judgment entered on August 20, 2001, in the Court of Common Pleas of Luzerne County, following the denial of Appellants' motion for a new trial, pursuant to Pa.R.Civ.P. 227.1(a)(1).[1] Upon review, we affirm.

¶ 2 Appellants present the following questions for our review:

1. Whether it is reversible error for the trial court to sustain hearsay objections to [Appellant Gerhart]-physician's testimony regarding factual aspects of [Appellee's] medical records, including test results and reports of other physicians, in the course of [Appellant Gerhart's] testimony regarding his first contact with [Appellee] during said admission, when the [Appellee] had been treated for two (2) days in [Appellant Gerhart's] absence, and where [Appellant Gerhart's] testimony is designed to describe the materials he reviewed and relied upon in determining his diagnosis and next course of action?

2. Whether it is reversible error for the trial court to have determined admitted portions of [Appellee's] subsequent hospitalization medical expenses for the jury's consideration, where the initial gastric bypass surgery performed by [Appellant Gerhart] is not alleged to have been performed negligently, and where [Appellee's] expert testified that [Appellee] would have required follow-up surgery and some subsequent hospitalization in any event, but where [Appellee's] expert does not differentiate at all the length of

---

1. We note that Appellee failed to praecipe to enter judgment in this case. Appellants took appeal on May 30, 2001, then filed a praecipe to enter judgment on August 20, 2001. Pa. R.A.P. 905(a) states, in relevant part, that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Therefore, although Appellants filed their notice of appeal prior to the entry of judgment, pursuant to Pa.R.A.P. 905(a), the appeal is deemed timely filed.

said inevitable hospitalization or any expenses related thereto from non-negligent treatment?

Appellants' brief, at 4.

¶ 3 A trial court's decision regarding the grant or refusal of a new trial will not be reversed on appeal absent an abuse of discretion or an error of law that controlled the outcome of the case. *Spino v. John S. Tilley Ladder Co.*, 548 Pa. 286, 696 A.2d 1169 (1997). In making this determination, we must consider, viewing the evidence in the light most favorable to the verdict winner, whether a new trial would produce a different verdict. *Robertson v. Atlantic Richfield Petroleum Products Co.*, 371 Pa.Super. 49, 537 A.2d 814 (1987). Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed. *Johnson v. Hyundai Motor America*, 698 A.2d 631 (Pa.Super.1997).

¶ 4 The relevant facts, viewed in a light most favorable to the verdict winner are as follows: On February 26, 1997, Appellant Clark D. Gerhart, M.D., performed a laparoscopic stomach stapling procedure on Appellee Ann M. Phillips in order to alleviate her morbid obesity. Appellant Gerhart performed this operation at Hazleton General Hospital. Appellee was discharged from Hazleton General Hospital on February 28, 1997. On March 1, 1997, Appellee was readmitted to Hazleton General Hospital after experiencing fever, abdominal pain, abdominal distention and shortness of breath. Later that day, Appellee was moved to the intensive care unit (ICU) of the hospital and placed on a ventilator. On March 3, 1997, Appellant Gerhart returned to work after his weekend holiday, and diagnosed Appellee's condition as pulmonary distress. Appellee's condition did not improve, and on March 7, 1997, Appellee was transferred from Hazleton General Hospital to Lehigh Valley Medical Center at her family's request. The following day, Peter Rovito, M.D., operated on Appellee after it was discovered that Appellee had a leak in the staple line in her stomach. Trial testimony indicates that a staple line leak is a common, non-negligent complication of the stomach stapling procedure. Appellee remained hospitalized at Lehigh Valley Medical Center until April 1, 1997. Following surgery, Appellee was unable to work for approximately six months, and suffered from a stricture in her esophagus that required repeated dilations to correct.

¶ 5 On March 23, 1999, Appellee brought suit against Appellants to recover for damages resulting from Appellant Gerhart's failure to diagnose properly and repair promptly the leak in the staple line in Appellee's stomach. A jury trial was held on December 11–15, 2000. At trial, Appellee alleged that subsequent re-hospitalization and surgery were a result of Appellants' negligence in failing to diagnose the staple line leak. However, Appellee did not allege that Appellant Gerhart performed the initial surgery in a negligent manner. On December 15, 2000, The jury found in favor of Appellee, and awarded her compensatory damages in the amount of $383,290.52. Following the verdict, the trial court awarded delay damages in the amount of $51,822.91, for a total verdict of $435,113.43. Following denial of Appellants' post-trial motions, Appellants brought timely appeal to this Court on May 30, 2001.

¶ 6 We turn to Appellants' first issue: Whether the trial court committed reversible error when it sustained hearsay objections to Appellant Gerhart's testimony regarding conversations he had with fellow physicians, as well as testimony regarding opinions of fellow treating physicians present in the medical records. Appellant Gerhart alleges that he was not

offering the statements for their truth, but that he was offering them to show that he relied upon those statements when treating Appellee. It is well-settled that a trial court's rulings on evidentiary questions are controlled by the sound discretion of the trial court, and the appellate courts of this Commonwealth will not disturb those rulings unless a clear abuse of discretion is shown. *Hall v. Jackson,* 788 A.2d 390, 401 (Pa.Super.2001). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record." *Commonwealth v. Kubiac,* 379 Pa.Super. 402, 550 A.2d 219, 223 (1988). An examination of the testimony in question indicates that no abuse of discretion occurred. On direct examination, Appellant Gerhart was asked:

MR. SABA: Is it fair to say that Dr. Zitarelli told you that [Appellee] had been admitted to the hospital?

APPELLANT: Yes.

MR. SABA: Did he report to you about what had happened, her symptoms, why she came in or what had happened to her since she was admitted?

APPELLANT: Yes.

MR. SABA: Is that a normal practice among physicians?

APPELLANT: Yes, it is.

MR. SABA: Do you rely upon the information you receive from the reporting physician to proceed further with your patient?

APPELLANT: Yes, certainly.

MR. SABA: What did Dr. Zitarelli tell you on March the 3rd 1997 about [Appellee]?

N.T., 12/11/2001–12/15/2001, at 403–404.

¶ 7 At that point, Appellee objected, stating:

MS. SHELLY: Objection. Hearsay.

MR. SABA: I believe I established an appropriate foundation, Your Honor.

THE COURT: Sidebar please.

N.T., 12/11/2001–12/15/2001, at 404.

¶ 8 The following conversation was held at sidebar:

THE COURT: Now, I am not sure about foundation. Are you claiming it is an exception to the hearsay rule?

MR. SABA: Yes, sir, he testified it is routine among physicians that when one comes back on duty the other relays to him the information that has—that he as about any patient he has seen and that he relied upon that information in the further treatment of his patient.

MS. SHELLY: Your Honor, I am not aware that is an exception to the hearsay rule.

MR. SABA: I believe it is.

MS. SHELLY: What is that exception.

THE COURT: Sustained.

N.T., 12/11/2001–12/15/2001, at 404–405.

¶ 9 Later during direct examination, Appellant Gerhart answered a series of questions regarding evidence contained in the hospital record for the weekend that Appellee was readmitted to Hazleton General Hospital. Appellant Gerhart was not working on that weekend, so other physicians treated Appellee. The testimony is as follows:

MR. SABA: Did Dr. Vegalia record his diagnostic impressions after his consultation upon [Appellee]?

APPELLANT: Yes, he did.

MR. SABA: What were his diagnostic impressions?

APPELLANT: It says impression number one, pulmonary edema and left lower lope (sic) infiltrate; number

two, post-op fever and atelectasis; number three, morbid obesity; number four, status post banding procedure.

\*　　\*　　\*　　\*　　\*　　\*

MR. SABA: Doctor, did Dr. Veglia record a plan for this patient on March the 1st?

APPELLANT: He did.

MR. SABA: What was that?

APPELLANT: The patient is transferred to the Intensive Care Unit. She has been treated with vigorous pulmonary toilet and antibiotic will be maintained. She has been as given (sic) a dose of Demadex. Will monitor her input and output and monitor her FI02 which is oxygen.

MR. SABA: Why was she admitted to ICU?

N.T., 12/11/2001–12/15/2001, at 416–417.

¶ 10 At that point, Appellee objected, stating:

MS. SHELLY: I object, Your Honor. Again, the testimony has been that [Appellant Gerhart] wasn't there that weekend. He is not interpreting why Dr. Veglia took certain actions he took.

THE COURT: Sustained.

N.T., 12/11/2001–12/15/2001, at 417–418.

¶ 11 Counsel resumed direct examination of Appellant Gerhart, asking:

MR. SABA: Doctor, who is Dr. Patel?

APPELLANT: Dr. Patel is a lung doctor.

MR. SABA: Practicing in Hazleton?

APPELLANT: Practicing in Hazleton.

MR. SABA: Does he practice at Hazleton General Hospital?

APPELLANT: Yes, he does.

MR. SABA: As part of the hospital records, did he record the results of his consultation?

APPELLANT: Yes, he did.

MR. SABA: Doctor, did he prepare a record of that consultation?

APPELLANT: Yes.

MR. SABA: What is the date of the record?

APPELLANT: 3/1/97.

MR. SABA: Did he also prepare a handwritten consultation?

APPELLANT: Yes, he did.

MR. SABA: What is the date of that?

APPELLANT: 3/1.

MR. SABA: Doctor, I have marked those documents as Exhibit 29–G. Did Dr. Patel record as part of his consultation and examination of the results of the patient's abdomen?

N.T., 12/11–15/2001, at 418–419.

¶ 12 At that point, Appellee objected again, stating:

MS. SHELLY: Your Honor, I object to this again. [Appellant Gerhart] wasn't there that weekend. He wasn't involved at this point in the patient treatment and having him interpret and read into the record hearsay observations by other physicians, I object to.

THE COURT: Sidebar please.

N.T., 12/11–15/2001, at 420.

¶ 13 The following discussion was held at sidebar:

MR. SABA: Your Honor, counsel admitted these documents into the record. They are already part of the record by counsel's admissions.

MS. SHELLY: The documents speak for themselves. To have him read selected portions of them and have him interpret them when he wasn't there that weekend.

MR. SABA: Judge, he is a physician who is involved in her treatment.

THE COURT: Sustained in part, denied in part. I will allow him to identify what she was being treated for. I will draw the line with regard to the witness going into the diagnosis and thought process of those other rotating physicians.

N.T., 12/11–15/2001, at 420–422.

¶ 14 Appellants' claim tests the limit of the "records of regularly conducted activity" exception to the hearsay rule. *See* Pa.R.E. 802; *see also* Pa.R.E. 803(6). Pa. R.E. 802 states:

Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute.

¶ 15 "Hearsay" is defined as, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). Pa. R.E 803 provides a number of exceptions to the hearsay rule, among them Pa.R.E. 803(6), the "records of regularly conducted activity" exception. Pa.R.E. 803(6) provides:

The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(6) Records of regularly conducted activity.

¶ 16 The definition of "records of regularly conducted activity" is contained in the comment to Pa.R.E. 803(6):

A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

¶ 17 The appellate courts of this Commonwealth have held that hospital records are admissible as records of regularly conducted activity to show facts of hospitalization, treatment prescribed and symptoms given. *Commonwealth v. Xiong,* 428 Pa.Super. 136, 630 A.2d 446 (1993). At issue here is whether Appellant Gerhart should have been allowed to testify as to the conversations he had with his fellow physicians after he returned to work on March 1, 1997, and whether he should have been allowed to read into testimony medical opinions that were part of hospital records. With respect to the Appellant Gerhart's testimony regarding conversations held with other physicians, it is clear that these conversations are hearsay and inadmissible. In *Spotts v. Reidell,* 345 Pa.Super. 37, 497 A.2d 630 (1985), we held that the defendant could not testify about a conversation with a fellow treating physician, because that conversation was a statement used to prove an act or explain conduct on the part of one other than the declarant. *Spotts,* 497 A.2d at 635. Here, as was the case in *Spotts,* the obvious implication from this "conversation" testimony would be that Appellant Gerhart acted in conformity with the recommendations of his fellow

physicians. *Id.* Accordingly, the trial court did not err when it excluded this testimony.

■ ¶ 18 Next, we consider whether the trial court erred when it excluded testimony from Appellant Gerhart regarding the physicians' opinions that were contained in the medical records. Initially, we note that the trial court correctly allowed Appellants to present factual information from the hospital records. However, we find that the trial court did not err when it excluded evidence regarding the treating doctors' opinions. We have long held that a medical opinion contained in a hospital record is not admissible unless the doctor who prepared the report is available for in-court, cross-examination regarding the accuracy, reliability, and veracity of his or her opinion. *Commonwealth v. McMaster*, 446 Pa.Super. 261, 666 A.2d 724 (1995), *appeal denied*, 555 Pa. 712, 724 A.2d 349 (1998). Although the line between statements of fact contained in hospital records and inadmissible medical opinion evidence is not often clear, we believe that the trial court drew the proper line between them in this case. Consequently, we find that the trial court committed no abuse of discretion with respect to Appellants' first claim.

■ ¶ 19 Next, we turn to Appellants' second issue: Whether the trial court erred when it allowed the jury to consider certain medical expenses that accrued to Appellee after her transfer to Lehigh Valley Medical Center. Specifically, Appellants allege that Appellee failed to delineate the portion of her medical expenses resulting from non-negligent complications following her first surgery from the portion that resulted from Appellants' alleged negligence. Therefore, Appellants argue that the trial court erred when it allowed certain medical expenses for the jury's consideration while excluding others. We reiterate that we will not disturb the ruling of the trial court on evidentiary matters absent a clear abuse of discretion. *Jackson*, 788 A.2d at 401.

■ ¶ 20 It is well-settled law that a plaintiff seeking special medical damages must prove the following: (1) medical services were rendered; (2) the reasonable charges for those services; (3) that the services rendered were necessary; and (4) that the medical services rendered were related to the injury that occurred. *Ratay v. Chen Liu*, 215 Pa.Super. 547, 260 A.2d 484, 486 (1969). We cannot find that the trial judge committed an abuse of discretion with respect to admitting the medical expenses in question. The record indicates that Appellee has shown both the necessity of her subsequent medical expenses and that Appellant Gerhart's negligence was related to her subsequent medical expenses. A review of the record shows that Appellee inquired of Dr. Brolin, her expert witness, the following:

> MS. SHELLY: Doctor, do you have an opinion as (sic) whether or not [Appellant Gerhart's] failure to diagnose the staple line leak on March 3rd resulted in injury to [Appellee]?
>
> DR. BROLIN: Yes.
>
> MS. SHELLY: What's your opinion? Did it result—did his negligence result in injury to [Appellee]?
>
> DR. BROLIN: It is my understanding she is still to this day (sic) has trouble swallowing and requires procedures to dilate scar tissue that resulted from this complication.
>
> \* \* \* \* \* \*
>
> MS. SHELLY: Do you have opinion (sic) as to whether or not [Appellant Gerhart's] negligence in identifying a staple line leak and operating in-

creased the amount of stay [Appellee] would have had in a hospital?

\* \* \* \* \* \*

DR. BROLIN: Yes. In general, the sooner you can recognize and treatment (sic) of a leak of this nature, the better off the patient is, the more likely they are able to recover quickly and the more likely they are to not have sustained damages or permanent injury.

MS. SHELLY: Do you have an opinion as to whether or not what [Appellee's] outcome would have been if [Appellant Gerhart] had operated on March 3rd?

DR. BROLIN: I think first of all, I think it is wonderful that [Appellee] is alive. Most of the time, when you don't recognize a leak like this, the patient dies. I feel good about that. In general, the longer you wait, the worse the outcome. You can scrap like that in any direction. I don't have much more to say on that.

N.T., 12/11/2001–12/15/2001, at 266, 270–271.

¶ 21 On the subject of medical expenses, Appellee asked Dr. Brolin:

MS. SHELLY: What portion of those medical bills within a reasonable degree of medical certainty do you believe were caused by [Appellant Gerhart's] negligence?

DR. BROLIN: Lehigh Valley is where she was transferred to. One would have it assume (sic) that would be 100 percent. Again, it is my firm believe (sic) that if you are going to perform these operations, you need to be able to deal with all the complications of surgery you do, in my opinion, you shouldn't be doing it. So the fact that this women (sic) had to go somewhere

else to get surgery to save her life, to me is gross negligence.

N.T., 12/11/2001–12/15/2001, at 272.

¶ 22 On cross-examination, Dr. Brolin conceded that Appellant Gerhart did not perform the original surgery negligently, and that in any event, Appellee would have required a second surgery to correct the staple line leak. N.T., 12/11/2001–12/15/2001, at 292–293. Following Dr. Brolin's testimony, Appellee sought to offer into evidence medical expenses for Appellee's second surgery and hospital stay at Lehigh Valley Medical Center and expenses for treatment of her esophageal condition. N.T., 12/11/2001–12/15/2001, at 320–321.[2] Appellants objected to evidence of Appellee's medical expenses being presented to the jury. Specifically, Appellants argued that Appellee would have needed corrective surgery regardless of their alleged negligence and that Appellee failed to delineate the portion of her medical expenses arising from negligence versus those resulting from non-negligent complications following her first surgery. N.T., 12/11/2001–12/15/2001, at 321. In consideration of Appellants' objection, Appellee withdrew her offer for the bill of the second surgery, but did not withdraw the other medical expenses. After a recess, Appellants renewed their objection. The trial court ruled that it would admit the medical expenses Appellee incurred after her second surgery, with the exception of the first week's stay in Lehigh Valley Hospital and the bill for surgery. N.T., 12/11/2001–12/15/2001, at 329–330. The total amount medical expenses introduced into evidence was $83,290.52.

 ¶ 23 We are unable to find an abuse of discretion with respect to the trial court's decision to exclude the first week of

2. We note that Appellee did not offer the expenses from her last week of stay in Hazle- ton General Hospital as evidence for the damages calculation.

expenses from Lehigh Valley Medical Center. Although Dr. Brolin's testimony did not delineate precisely what medical expenses were incurred by Appellant Gerhart's negligence, the law does not require exact certainty as to the precise amount of damages incurred. *Wujcik v. Yorktowne Dental Assocs.*, 701 A.2d 581, 584 (Pa.Super.1997). Rather, the law requires "a plaintiff to produce evidence which establishes, with a fair degree of probability, a basis for assessing damages." *Wujcik*, 701 A.2d at 584. With Dr. Brolin's testimony before it, the trial court admitted the evidence of medical expenses that it found were a basis for assessing medical damages, and excluded those expenses that would have accrued to Appellee regardless of Appellants' negligence, namely, Appellee's first week of care at Lehigh Valley Medical Center. Therefore, we find no abuse of discretion with respect to Appellants' second claim. Accordingly, we affirm the judgment of the trial court.

¶ 24 Judgment affirmed.