J-S77009-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL LEACH | |
| Appellant | No. 2833 EDA 2013 |

Appeal from the Judgment of Sentence August 14, 2013
In the Court of Common Pleas of Bucks County
Criminal Division at No: CP-09-CR-0008065-2012

BEFORE: STABILE, JENKINS, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:         **FILED FEBRUARY 09, 2015**

Appellant Michael Leach appeals from the August 14, 2013 judgment of sentence of the Court of Common Pleas of Bucks County (trial court), which, following a jury trial, convicted him of, *inter alia*, two counts of manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance.[1] Upon review, we affirm the judgment of sentence.

The facts and procedural history underlying this appeal are uncontested. On October 12, 2012, Officer Robert Compton Jr., Bedminster Township Police Department, charged Appellant with, *inter alia*, manufacture, delivery, or possession with intent to manufacture or deliver a

_____

[*] Retired Senior Judge assigned to the Superior Court.
[1] 35 P.S. § 780-113(a)(30).

controlled substance. In his affidavit of probable cause accompanying the complaint, Detective Kosch alleged in part:

> Your affiant conducted a criminal investigation into a subject selling Oxycodone, in Bucks County Pennsylvania using a confidential informant [(CI)].
>
> The [CI] providing the information has provided accurate and reliable information resulting in arrests. During the course of my investigation, I was able to cooberate [sic] the [CI's] information being provided to me. . . .
>
> On 3/9/12, at your affiant's direction, [the] CI and an undercover police officer met with [Appellant] at a predetermined location. . . . During this meeting, the CI and undercover police officer gave [Appellant] $100.00 in pre-recorded buy money. [Appellant] then gave the CI 10 Oxycodone 10mg pills. There were other officers in the area conducting surveillance during the transaction.
>
> . . . . The evidence was submitted to the Bucks County Crime Laboratory and was confirmed as Oxycodone.
>
> On 4/5/12, at your affiant's direction, [the] CI and an undercover officer met with [Appellant] at a pre-determined location. During this meeting, [Appellant] provided the CI with 2 Oxycodone 30mg pills. The CI in return, gave [Appellant] $60.00 in pre-recorded buy money. There were other officers in the area providing surveillance for this transaction.
>
> . . . .
>
> [Appellant] used the same vehicle for both narcotics deals. [Appellant] operates a burgundy 2002 Oldsmobile sedan . . . .

Affidavit of Probable Cause, 10/12/12.

On May 3, 2013, Appellant filed an "Omnibus Pretrial Motion," requesting the trial court to order the Commonwealth to disclose the identity of the CI. In his pretrial motion, Appellant alleged "[t]he only person who can identify the person on the sale is the [CI]." Omnibus Pretrial Motion, 5/3/13, at ¶ 3. Following a hearing on the motion, the trial court denied Appellant's request for disclosure of the CI's identity. **See** N.T. Pretrial Hearing, 5/13/13, at 84-85.

- 2 -

After the jury returned a guilty verdict, the trial court sentenced Appellant to serve concurrently three to six years in prison on two counts of manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance. Appellant filed a Pa.R.A.P. 1925(b) statement, reproduced here verbatim:

> 1. [Appellant] is entitled to a new trial because [the trial court] repeatedly, unreasonably, and unfairly restricting [sic] his efforts to cross-examine Commonwealth witnesses, violated [Appellant's] rights under U.S. Const. Amend. V, VI, and XIV and Pa. Const. Art. I, §§ 1 and 9, to confront witnesses against him, when it sustained Commonwealth objections to questions about a confidential informant, including (but not limited to) those objections interposed during cross-examination at NT 5/14/2013, pp. 77, 136, 174-75, 179-despite repeated references by Commonwealth witnesses to hearsay evidence form [sic] and observations of the confidential informant (see e.g. NT 5/14/2013, pp. 16, 17, 23, 27, 37, 49, 51, 56, 58, 61, 62, 63, 65, 80, 85, 86, 87, 88, 89, 90, 91, 93, 98, 102, 121, 128, 136, 141, 142, 143, 144, 145, 146, 147, 148, 155, 156, 157, 159, 160, 161, 166, 170, 171, 181, 186, and 187) and a curative instruction, that bolstered the weight and credibility of hearsay testimony coming form [sic] the informant (NT 5/14/2013, 169).

Rule 1925(b) Statement, 3/17/14. On April 1, 2014, the trial court issued its Pa.R.A.P. 1925(a) opinion, wherein it addressed, *inter alia,* Appellant's argument that the trial court abused its discretion in denying the omnibus pretrial motion requesting the disclosure of the CI's identity.

On appeal,[2] Appellant argues only that the trial court erred "when, even though the Commonwealth only offered police officers as witnesses to

_____

[2] "Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." **Commonwealth v. Washington**, 63 A.3d 797, 801 (Pa. Super. 2013).

a controlled buy of controlled substances, it denied [Appellant's] motion to reveal the identity of the [CI.]" Appellant's Brief at 3. In other words, Appellant argues:

> [T]hough in this case there was more than one witness testifying about the alleged sales of drugs by [Appellant], all of the witnesses shared a characteristic that, for [all] intents and purposes, rendered them as a single witness: they were all law enforcement working on an investigation of [Appellant], who only saw [Appellant] in person at night under the light of streetlamps.

*Id.* at 11-12. Appellant, however, does not provide any indication on how and when he raised and preserved this argument for our review. As a result, we must deem this argument waived. **See** Pa.R.A.P. 2117(c), 2119(e); **see also Commonwealth v. Williams**, 980 A.2d 667, 671 (Pa. Super. 2009) (noting that under the rules of appellate procedure, an appellant must specify where in the record a claim on appeal was preserved). Additionally, "it is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review." **Commonwealth v. Baker**, 963 A.2d 495, 502 n.6 (Pa. Super. 2008). Nonetheless, upon our review of the record, we observe that Appellant failed to preserve this argument below by not raising it before the trial court or in his 1925(b) statement. **See Williams**, 980 A.2d at 671 (noting issues not raised in the trial court are waived and cannot be raised for the first time on appeal); **see** Pa.R.A.P. 302(a).

Additionally, Appellant here fails to cite to any legal authority in his brief in support of his novel argument that multiple police officers who witness the commission of a crime are reduced to a single entity. *See Commonwealth v. Janda*, 14 A.3d 147, 164 (Pa. Super. 2011) (where an appellant's brief is devoid of any legal citations or evidence of record in support of his contention, the issue is deemed waived); Pa.R.A.P. 2119(b).

To the extent Appellant's argument can be construed as challenging the trial court's denial of his omnibus pretrial motion for disclosure of the CI's identity, we conclude the trial court did not abuse its discretion. After careful review of the parties' briefs, the record on appeal, and the relevant case law, we conclude that the trial court's Rule 1925(a) opinion authored by the Honorable Clyde W. Waite, adequately disposes of Appellant's issue on appeal. *See* Trial Court Opinion, 4/1/14, at 12-17. We, therefore, affirm the trial court's judgment of sentence. We direct that a copy of the trial court's April 1, 2014 Rule 1925(a) opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/9/2015

- 5 -

Stu Wilder

Circulated 01/30/2015 04:00 PM

D. A.

CRT

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : No. 8065 of 2012

v. :

MICHAEL LEACH :

## OPINION

Appellant Michael Leach was arrested and charged on Criminal Information 8065-2012 with three counts of Criminal Use of a Communication Facility, 18 Pa.C.S. § 7512(a); three counts of Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver a Controlled Substance, 35 P.S. § 780-113(a)(30); three counts of Intentionally Possessing a Controlled Substance by a Person Not Registered, 35 P.S. § 780-113(a)(16); and three counts of Driving While Operating Privilege is Suspended or Revoked, 75 Pa.C.S.A. § 1543(a).

On May 14, 2013, after a two-day trial by jury, prior to which defense counsel's pretrial motion requesting disclosure of the confidential informant's identity was denied, Leach was found guilty upon Counts 1 and 2, Criminal Use of a Communications Facility; Counts 3 and 4, Manufacture, Delivery or Possession with Intent to Manufacture or Deliver; and Counts 5 and 6, Intentional Possession of Controlled Substance by Person Not Registered. After the announcement of the jury's verdict, this Court also found Leach guilty of the summary offenses under Counts 7 and 8, Driving While Operating Privilege is Suspended.

On July 10, 2013, the Bucks County Public Defender's Office filed a Petition for Appointment of Private Counsel to handle Leach's appellate matters. On July 12, 2013, this Court approved the Petition and appointed Stuart Wilder, Esquire to represent Leach.



On July 16, 2013, Leach's court-appointed appellate counsel filed a "Motion for Transcription of Notes of Testimony for Aid in Representation of the Defendant in Post-Conviction/Appellate Proceedings." On July 18, 2013, and again on July 29, 2013, this Court issued an Order approving the Motion and ordering that the Notes of Testimony from the May 13, 2013 hearing be transcribed and forwarded to defense counsel.

On August 14, 2013, after Leach exercised his right of allocution, this Court sentenced Leach upon each of Counts 3 and 4, Manufacture, Delivery or Possession with Intent to Manufacture or Deliver, to pay the costs of prosecution and undergo imprisonment in a State Correctional Facility for not less than three (3) nor more than six (6) years. The sentences were to be served concurrently. No further penalties were imposed upon Counts 1 and 2, Criminal Use of a Communications Facility; Counts 5 and 6, Intentional Possession of Controlled Substance by Person Not Registered; or Counts 7 and 8, Driving While Operating Privilege is Suspended.

On September 12, 2013, Leach filed a Notice of Appeal to the Superior Court of Pennsylvania from this Court's Order of August 14, 2013, imposing sentence. He also contemporaneously filed another Motion for Transcripts.

On September 13, 2013, this Court ordered Leach to file a Statement of Errors Complained of on Appeal no later than twenty one (21) days from the date of the Order pursuant to Pa.R.A.P. 1925(b).

On October 2, 2013, Leach filed a Motion to Extend Time for Filing Statement Under Pa.R.A.P. 1925(b). By Orders docketed on October 2, 2013 and October 10, 2013, this Court granted Leach's request and extended the time to file his Statement of Errors Complained of on Appeal to November 12, 2013.

2

On November 6, 2013, Leach filed another Motion to Extend Time for Filing Statement Under Pa.R.A.P. 1925(b), asserting that the Notes of Testimony had not yet been prepared. On November 12, 2013, this Court granted Leach's request and extended the time for filing the Statement of Errors to January 2, 2014.

On December 27, 2013, Leach again filed another Motion to Extend Time for Filing Statement Under Pa.R.A.P. 1925(b), asserting that the Notes of Testimony had still not been prepared. On December 31, 2013, this Court issued an Order again granting Leach's request and extended the time to file his Statement of Errors to February 2, 2014.

On February 3, 2014, Leach filed another Motion to Extend Time for Filing Statement Under Pa.R.A.P. 1925(b). On February 7, 2014, this Court issued an Order denying Leach's fourth Motion.

On February 18, 2014, the transcripts were filed for the May 14 and 15, 2013 trial and the August 14, 2013 sentencing hearing.

On February 24, 2014, Leach filed a "Defendant's Statement Pursuant to Pa.R.App.Pro. 1925(b)."

On March 11, 2014, the Superior Court of Pennsylvania issued an Order permitting Appellant "to file with the trial court and serve upon the trial judge a statement of errors complained of on appeal, pursuant to Pa,R,A, 1925(b), within twenty-one (21) days of the date that this Order is filed." In addition, the Order directed the trial judge to prepare an opinion, pursuant to Pa.R.A.P. 1925(a), in response to the Rule 1925(b) statement, within thirty (30) days of the date the statement is received.

3

On March 17, 2014, Leach's appellate counsel filed the "Defendant's Statement Pursuant to Pa.R.App.Pro, 1925(b) Submitted Pursuant to the March 11, 2014 Order of the Superior Court Allowing the Defendant to Submit a Statement Pursuant to Pa.R.App.Pro. 1925(b)."

This Opinion is filed pursuant to Pa.R.A.P. 1925(a).

FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the following relevant evidence was presented at Leach's jury trial conducted on May 13 and 14, 2013:

Officer Hope Hatton of the Upper Makefield Township Police Department testified that on March 9, 2012, she was performing an undercover narcotics investigation with Officer Compton and met with Officer Wayne Jones, Sergeant Pfaff, and a confidential informant ("C.I.") at the Bedminster Police Department Headquarters. After performing a full body cavity search of the C.I. to insure there were no drugs upon her person, Officer Hatton was issued $200.00 in pre-recorded bills, and she and the C.I. left to conduct a purchase of narcotics from Leach, whom she identified in the courtroom. N.T. May 14, 2013, pp. 12-18.

Officer Hatton testified that she was a passenger in a Dodge Ram pickup truck driven by the C.I. They drove to 200 North Ridge Road in Perkasie, Bucks County, Pennsylvania, where they parked in the driveway and waited for Leach to arrive. She testified that Leach arrived in a maroon-colored Oldsmobile, parked on the driver's side of their vehicle, got out and approached the driver's window and conversed with the C.I. N.T. May 14, 2013, pp. 19-23.

Officer Hatton testified that the area where this transaction occurred was lit by a street lamp and she had no difficulty in observing Leach's face. She said she identified Leach from a

4

driver's license photo she had been provided earlier, and described his goatee, light colored eyes and discolored and "not very straight" teeth. N.T. May 14, 2013, pp. 22-24, 28.

Officer Hatton testified that Leach gave the C.I. ten pills and the C.I. gave Leach $100.00 of the pre-recorded money. The C.I. then gave the pills to her, and they observed Leach re-enter the Oldsmobile and drive away. N.T. May 14, 2013, pp. 25-27.

Officer Hatton and the C.I. left the area to conduct another narcotics transaction and then returned to the Bedminster Township Police headquarters where she gave the pills to Officer Compton and conducted another complete body search of the C.I. N.T. May 14, 2013, pp. 28-30.

On cross-examination, Officer Hatton stated that the transaction lasted "a minute or two," she had not met Leach before, and she admitted that she did not recall what he was wearing at that time. N.T. May 14, 2013, pp. 32-41.

Officer Melissa Herman, a patrol officer for the Warminster Township Police Department, testified that on April 5, 2012, she served as an undercover police officer with the Bedminster Township Police Department. After arriving at the Bedminster Police Station she met with Officer Compton, Officer Dockery, Detective Jones, Officer Harold and the C.I., and they reviewed the operations planned for that evening. She testified that she was responsible for searching the C.I. to insure "there was no contraband" and ensuring the safe execution of the planned operation. She testified that was also shown Leach's driver's license photograph at that time, and she identified him in court as the defendant. N.T. May 14, 2013, pp. 44-49.

Officer Herman stated she was present when the C.I. made a telephone call to arrange the narcotics purchase, and she then conducted a full body search of the C.I. Officer Herman said she was a passenger in the vehicle driven by the C.I. She said they drove to a meeting for another

investigation and then, after the C.I. and Leach exchanged text messages, they drove to the Revivals Restaurant and Bar, located at 4 South Ridge Road in Perkasie, Bucks County, Pennsylvania. Officer Herman then identified and read into the record the Commonwealth exhibits which depicted the text messages. N.T. May 14, 2013, pp. 49-58.

Officer Herman testified that they parked in the front parking lot of Revivals, which was well lit, and that Leach had already arrived there and was waiting in a maroon-colored older model Oldsmobile sedan. She said that upon their arrival, Leach exited his vehicle and came directly to the driver's side window, where she was able to immediately recognize that he was bald, had a goatee and very bad "rotted looking" teeth. She said they briefly conversed, and the C.I. handed the pre-recorded money to Leach who in turn handed the C.I. two pills. In Court, Officer Herman identified the prerecorded bills used in the transaction. She stated they then returned to the Bedminster Police station where she again conducted a search of the C.I. N.T. May 14, 2013, pp. 58-66.

On cross-examination, Officer Herman stated that she had never met or seen Leach prior to April 5, 2012. She said the transaction on that evening lasted about two to three minutes, and she had not been involved in the March 9, 2012 investigation. She stated that she could identify his face, but could not recall what he was wearing on that particular night. N.T. May 14, 2013, pp. 66-79.

Detective Wayne Jones is a detective with the Doylestown Borough Police Department who assisted with the March 9, 2012 investigation by searching the "informant's vehicle prior to and after the buy, and provid[ing] security observation for the detail." He testified that his searches of the C.I.'s vehicle revealed it was "free and clear of contraband." He stated that he had "deploy[ed] to the area where the narcotics buy was going to take place" at North Ridge in

6

Perkasie, Bucks County, at approximately 9:30 in the evening. He said he observed the arrival of the C.I.'s vehicle and then, within minutes, the arrival of a maroon-colored Oldsmobile, from which Leach emerged. He said Leach went to the driver's side of the C.I.'s vehicle, remained there for "maybe two minutes," and then returned to his vehicle and left. Detective Jones said he then followed Leach for about two miles and noted his license plate number, HLN1163, which he radioed to Officer Compton. He then returned to the Bedminster Police station and conducted a follow-up search of the C.I.'s vehicle which did not reveal the presence of any contraband or narcotics. N.T. May 14, 2013, pp. 82-93.

Detective Jones testified that he had also been involved with the April 5, 2012 investigation by providing "security surveillance." After meeting with the other officers at the Bedminster Police station, Detective Jones said he drove a Toyota Corolla to Revivals Restaurant where he parked in the lot which had very good lighting. He stated that Officer Dockery had also parked there in a silver-colored Equinox. He said he then observed a maroon-colored Oldsmobile enter the lot, which he recognized as the same vehicle he had observed during the March 9, 2012 investigation, and observed Leach in the vehicle. N.T. May 14, 2013, pp. 94-97.

Detective Jones said the C.I.'s vehicle then entered the lot and Leach exited his vehicle and approached the C.I.'s vehicle. He said Leach was out of his view for two or three minutes at that point, but then he saw Leach get back into his vehicle and leave the parking lot. Detective Jones then followed him for a brief distance and observed that the license plate was HLN 1166. Detective Jones identified Leach in the courtroom as the individual he observed during the March 9, 2012 and April 5, 2012 transactions. N.T. May 14, 2013, pp. 98-103.

Officer Timothy Dockery is a patrolman and SWAT team member of the Plumstead Township Police Department. He testified that he conducted a search of the C.I.'s silver Dodge

pickup vehicle on the evening of April 5, 2012, and did not find any weapons or controlled substances in it. He said he then conducted surveillance at the Revivals restaurant at around 8:30 p.m. while driving a Chevy Equinox. N.T. May 14, 2013, pp. 112-117.

Officer Dockery testified that he parked next to Detective Jones, who was on his right, and then Leach arrived and parked his vehicle directly next to his on his left side. He testified that Leach remained in his vehicle until the C.I.'s vehicle arrived, and then Leach "exited the driver's side, walked around the [C.I.'s] truck to the driver's side of the C.I.'s vehicle and the transaction was made. He walked back to his vehicle and got in." After Leach left, Detective Jones followed the C.I.'s vehicle back to the police station and conducted another search of it which revealed no contraband or weapons. N.T. May 14, 2013, pp. 117-124.

Officer Robert Compton, a patrolman with the Bedminster Township Police Department and a special Bucks County-sworn narcotics officer, testified that he was the case manager and lead investigator for the March 9, 2012 investigation. He testified that he set the predetermined location for the meeting with Leach on North Ridge Road in Perkasie, Bucks County, and that he had information that Leach would be driving a burgundy-colored Oldsmobile. He testified that Sergeant Pfaff issued him $200.00 in pre-recorded currency, which he gave to Officer Hatton who in turn gave it to the C.I. N.T. May 14, 2013, pp. 134-140.

Officer Compton testified that Leach was contacted from the C.I.'s cell phone, at telephone number 267-221-0766, which had been identified as "Mike L" on the C.I.'s cell phone, for the purpose of "set[ting] up the buy location, and the amount and for what price." Officer Compton testified that the buy location was North Ridge Road and the purchase price was $100.00. N.T. May 14, 2013, pp. 141-144.

8

Officer Compton read the text messages that had been exchanged between the C.I. and "Mike L." which he had photographed from the C.I.'s cell phone, including the following:

| | |
|---|---|
| C.I.: | I have a really bad toothache, do you have anything at all? |
| Mike L.: | Yeah, I'll call you soon. |
| C.I.: | K. Thanks. |
| Mike L.: | Call me, I got shit for you. |
| C.I.: | Traffic is crazy. I'll be there closer to 8:30 and I need ten. Thanks. |

The messages were time and date stamped March 9, 2012, 7:30 p.m. N.T. May 14, 2013, pp. 145-146.

Officer Compton testified that he had followed the other officers to the predetermined location and was in the area but did not personally observe the transaction. He said that after the transaction, they returned to the police headquarters where the evidence of ten pink Oxycodone pills, also known as Percocet, was turned over to him. The pills were photographed, sealed, labeled and sent to the Bucks County Crime Laboratory for testing, which eventually confirmed that the pills were Oxycodone. N.T. May 14, 2013, pp.147-154.

Officer Compton testified that he was also involved in the April 5, 2012 investigation and transaction that occurred at the Revivals Restaurant. He testified that Leach was again contacted by the C.I. using her cell phone to call "Mike L." at the same telephone number that was used in the March 9 investigation, and that the C.I. arranged for the purchase of two 30-milligram Oxycodone pills. Officer Compton related that the "going rate on the street is a dollar a milligram, so a 30-milligram pill is going to cost $30, and a 10-milligram pill only costs $10.00." He testified that the pills involved in the March 9, 2012 transaction were 10-milligram pills. N.T. May 14, 2013, pp. 155-158.

Officer Compton testified that when the officers returned to the police station after the transaction, the two Oxycodone pills were turned over to him by Officer Herman. As before, the

9

pills were photographed, logged, sealed and placed into the receiving locker, and eventually sent to the Bucks County Crime Laboratory where they tested positive for Oxycodone. N.T. May 14, 2013, pp. 161-166.

Officer Compton explained that Leach was not arrested immediately after the purchases because he will often first meet with a suspect, describe the charges involved and provide the choice to become a confidential informant or face the charges. He also explained that Leach was not arrested immediately after the April 5 transaction in order to protect the identity of the confidential informant. N.T. May 14, 2013, p. 166, 168-170.

Officer Compton testified that he subsequently contacted Leach using the same cell phone number used in the March 9 and April 5, 2012 transactions. He testified that the individual who answered identified himself as "Mike," and they arranged to meet at the police station. Officer Compton testified that after arranging the meeting, Leach was the individual who arrived at the police station. Officer Compton testified that when Leach was asked if he was the one involved in the narcotic sales, Leach "hesitated and then simply nodded his head yes." N.T. May 14, 2013, pp. 166-167.

On cross-examination, Officer Compton was asked a number of questions pertaining to the C.I., to which the Commonwealth consistently objected. This Court in turn sustained those objections, and explained to the jury:

> Ladies and gentlemen, if there is information that would be material and important to a defendant's defense, then the Court would have to weigh the potential exposure of the C.I. to the defendant's right to protect and defend the charges that were being brought. This is by way of explain[ing] to you why this line of questions that deal with possibly identifying this confidential informant, and [ ] these objections are being sustained and that information is being denied the defendant.
> I don't want to go into any further detail about that. But the line of questions are not going to be allowed to be answered so long as the objections are made. So you might hear a continuing line of objections and a continuing

10

sustaining of those objections, and I want to try to explain to you why this is happening.

N.T. May 14, 2013, pp. 171- 181, 183-186.

Officer Compton testified that the number he dialed to contact Leach was identified in the C.I.'s cell phone as "Mike L." He explained that he did not order that photographs or videos be taken of the transactions because the officers involved in those transactions were well trained and sitting in the passenger seat right next to the C.I., and he was confident in their ability to make an identification. N.T. May 14, 2013, pp. 187-188.

As noted above, on May 14, 2013, upon conclusion of the trial, the jury returned with verdicts of guilty upon Counts 1 and 2, Criminal Use of a Communications Facility; Counts 3 and 4, Manufacture, Delivery or Possession with Intent to Manufacture or Deliver; and Counts 5 and 6, Intentional Possession of Controlled Substance by Person Not Registered. This Court also found Leach guilty of the summary offenses under Counts 7 and 8, Driving While Operating Privilege is Suspended.

As also previously noted, Leach's court-appointed appellate counsel initially filed a "Defendant's Statement Pursuant to Pa.R.App.Pro. 1925(b)" on February 14, 2014, but he subsequently substituted that Statement with the "Defendant's Statement Pursuant to Pa.R.App.Pro, 1925(b) Submitted Pursuant to the March 11, 2014 Order of the Superior Court Allowing the Defendant to Submit a Statement Pursuant to Pa.R.App.Pro. 1925(b)," which he filed on March 17, 2014.

In his latest "Statement Pursuant to Pa.R.App.Pro. 1925(b)," Leach argues *verbatim*:

1. The Defendant is entitled to a new trial because the Court repeatedly unreasonably, and unfairly restricting his efforts to cross-examine Commonwealth witnesses, violated

11

the Defendant's rights under U.S.Const. Amend. V, VI, and XIV and Pa. Const. Art. I, §§ 1 and 9, to confront witnesses against him, when it sustained Commonwealth objections to questions about a confidential informant, including (but not limited to) those objections interposed during cross-examination at NT 5/14/2013, pp. 77, 136, 174-175, 179- despite repeated references by Commonwealth witnesses to hearsay evidence form and observations of the confidential informant (see e.g. NT 5/14/2013, pp. 16, 17, 23, 27, 31,49, 51, 56, 58, 61, 62, 63, 65, 80, 85, 86, 87, 88, 89, 90, 91, 93, 98, 102, 121, 128, 136, 141, 142, 143, 144, 145, 146, 147, 148, 155, 156, 157, 159, 160, 161, 166, 170, 171, 181, 186 and 187) and a curative instruction, that bolstered the weight and credibility of hearsay testimony coming from the informant (NT 5/14/2013, 169) [sic].

Defendant's Statement, March 17, 2014.

## DISCUSSION

In this appeal Leach argues that he is entitled to a new trial because this Court "repeatedly unreasonably, and unfairly restricted" his cross-examination of Commonwealth witnesses by sustaining the Commonwealth's objections to questions about a confidential informant and alleged "hearsay evidence coming from the informant." Leach's appeal is based solely upon this Court's ruling which denied his pre-trial Motion to disclose the confidential informant's identity at trial after the Commonwealth argued, and we agreed, that the informant's identity should remain confidential. According to Leach, this was a violation of his Constitutional rights "to be confronted with the witnesses against him."

The Superior Court of Pennsylvania has stated that "[o]ur standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." *Commonwealth v. Withrow*, 932 A.2d 138, 140 (Pa. Super. 2007).

12

"It is well settled that an abuse of discretion is not merely an error of judgment, but rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence on the record." *Commonwealth. v. Moore*, 978 A.2d 988, 991 (Pa. Super. 2009) *(citing Commonwealth v. Barnes*, 871 A.2d 812, 819 (Pa.Super. 2005).

In *Commonwealth v. Marsh*, 997 A.2d 318 (Pa. 2010), which involved an undercover purchase of controlled narcotic substances similar to the case *sub judice*, the Supreme Court of Pennsylvania discussed in depth the issue of the disclosure of a confidential informant's identity. In an effort "to provide greater clarity regarding the circumstances under which disclosure of a confidential informant's identity should be made to a criminal defendant," *Id.* at 319, the Court observed that:

> [o]ur case law provides that if a defendant shows that disclosure of an informant's identity would yield information material to his or her defense, and that the request for disclosure is reasonable, the trial court must then balance relevant factors to determine, in its discretion, whether the informant's identity should be revealed. *Commonwealth v. Bing*, 551 Pa. 659, 713 A.2d 56, 58 (1998). In this case, as a threshold matter, the identity of the informant was completely immaterial to the asserted defense, and the request for disclosure was not reasonable. Moreover, the trial court and Superior Court apparently determined that where the only eyewitnesses to an illegal drug transaction are a confidential informant and a police officer, the balance automatically tips toward disclosing the informant's identity to the defendant, regardless of all other attendant facts and circumstances. However, there is no fixed rule with respect to disclosure of an informant's identity. Instead, the determination regarding whether disclosure should be made depends on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors essential to a fair balancing of the competing interests involved. *Id.*

*Marsh*, 997 A.2d at 321.

The Court in *Marsh* reiterated that:

> [t]he Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. *Commonwealth v. Bing, supra* at 58; *Commonwealth v. Roebuck*, 545 Pa. 471, 681 A.2d 1279, 1283 n. 6 (1996). In order to overcome this

13

qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable. *Roebuck, supra* at 1283. Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth. *Bing, supra* at 58; *Commonwealth v. Herron*, 475 Pa. 461, 380 A.2d 1228 (1977).

In striking the proper balance, the court must consider the following principles:

> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations[,] the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

> [N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284, 287 (1967) (quoting *Roviaro v. United States*, 353 U.S. 53, 60–62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)).

*Marsh*, 997 A.2d at 321-322.

Significantly, the Court in *Marsh* stressed that "[t]his Court has repeatedly 'recognized the importance of the Commonwealth's qualified privilege to maintain the confidentiality of an informant in order to preserve the public's interest in effective law enforcement. Also, the safety of the confidential informant is a controlling factor in determining whether to reveal his identity.'" *Id.* At 324 (citing Bing, 713 A.2d at 58).

In the case *sub judice*, Leach's trial counsel filed an Omnibus Pretrial Motion on May 3, 2013, which asserted that "on the day of the alleged sale, the confidential informant placed a

14

phone call to set up the sale [and] [t]he only person who can identify the person on the sale is the confidential informant." The Motion therefore requested the disclosure of the identity of that confidential informant.

After careful consideration of the competing interests and positions of the parties, this Court denied that Motion at the start of the trial on May 13, 2013. Recognizing that the Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source, this Court determined that the Commonwealth's expressed concerns for the safety of the confidential informant, the potential danger that may exist from possible retribution, and the desirability of maintaining the flow of information provided by this and other confidential informants were of paramount importance, and in the particular circumstances of this matter outweighed Leach's Constitutional rights to confront that witness.

Nevertheless, in his allegation of trial court error, Leach implies that he has been prejudiced by his inability to confront the confidential informant, and he attempts to bolster this allegation by alluding to impermissible "hearsay evidence" and "hearsay testimony coming from the informant."

In responding to this allegation, we note that, aside from the original defense Motion arguing that the confidential informant was the only person who could identify the other individual involved in arranging the transactions during the telephone conversations, Leach has not presented any compelling argument to convince us that the identity of the confidential informant was material to his defense. While he may have sought to test the confidential informant's credibility and examine the circumstances surrounding the arrangements made during those telephone conversations, Leach has not explained how that information or the identity of the participants in those telephone conversations was relevant, critical and/or material

15

in any way to his defense, or how that information would rebut the overwhelming evidence of his actual participation in the transactions, including the testimony of numerous law enforcement officials who, in addition to the confidential informant, personally witnessed the actual illicit transactions and identified the defendant as a participant.

For example, we noted that after the transactions had been completed and Officer Compton used the confidential informant's cellular telephone to call the telephone number identified as "Mike L.," it was Leach who answered and agreed to meet with Officer Compton. Furthermore, it was Leach who actually arrived at the police station, and according to Officer Compton, nodded his head in the affirmative when asked if he had participated in the transactions. We are unable to discern how knowledge of the confidential informant's identity would contradict or impeach this evidence or materially contribute in any other way to Leach's defense.

This Court observed that this was not a case, in accordance with the suggestion in *Marsh*, *supra*, that involved the testimony of only the confidential informant and one law enforcement official, which then potentially militate in favor of the disclosure of the informant's identity. Instead, this was a case where multiple law enforcement officials were present during the transactions and the testimony of each of those involved corroborated the identity and involvement of the defendant in those transactions.

We also observed throughout the trial that the Commonwealth avoided reference to the confidential informant's identity and any potential hearsay statements made by that confidential informant. Although the Commonwealth presented evidence of the text messages that had been sent from and received by the confidential informant's cellular telephone, such evidence did not constitute impermissible hearsay. While the text messages were relevant and informative to the

16

jury, those messages were clearly not offered to prove the truth of the matter asserted in them since the jury did not need to "believe the actual text of the text messages, that is, the matters asserted therein, to grasp what the text messages were offered at trial to prove." *See Commonwealth v. Koch*, 39 A.3d 996, 1006 (Pa.Super. 2011).

It was clearly this Court's prerogative and duty to determine whether the confidential informant's identity was material to Leach's defense and should therefore be disclosed, but after a careful evaluation and balancing of the competing interests, we declined to do so. In arriving at our decision, we were mindful that the Commonwealth has a qualified privilege to withhold the identity of a confidential source, particularly for concerns of safety, and we were not convinced that Leach's request for disclosure of the informant's identity was reasonable or material to his defense. Consequently, this claim of error is meritless.

In an apparent attempt to provide support for his allegation that it was error for this Court to deny disclosure of the confidential informant's identity, Leach has alluded to impermissible "hearsay evidence" and "hearsay testimony coming from the informant." He further suggests that the explanation provided to the jury in response to repeated objections to questioning related to the identity of the confidential informant which were sustained by this Court, was actually "a curative instruction that bolstered the weight and credibility of hearsay testimony coming from the informant."

> It is well-established that:
>
> [h]earsay is a statement, other than a statement made by the declarant while testifying under oath, which is offered for the truth of the matter asserted. Pa.R.E. 801(c). Generally, hearsay is inadmissible at trial. Pa.R.E. 802. However, where an out-of-court statement is not admitted for the purpose of proving the truth of what was said, the hearsay rule does not bar admission of that statement. *See, e.g., Spotts v. Reidell*, 345 Pa.Super. 37, 497 A.2d 630 (1985); *Bachman v. Artinger*, 285 Pa.Super. 57, 426 A.2d 702 (1981). "Testimony as to an out of court statement, written or oral, is not hearsay if offered to prove, not that the content of

17

the statement was true, but that the statement was made." *Id.* at 705. "The hearsay rule does not apply to all statements made to or overheard by a witness, but only those statements which are offered as proof of the truth of what is said. Thus, a witness may testify to a statement made to him when one of the issues involved is whether or not the statement was, in fact, made." *Commonwealth v. Wright,* 455 Pa. 480, 485, 317 A.2d 271, 273 (1974).

*American Future Systems, Inc. v. BBB,* 872 A.2d 1202, 1213 (Pa.Super. 2005).

In addition, the Superior Court has consistently stated that:

[a]dmission of evidence is within the sound discretion of the trial court and we review the trial court's determinations regarding the admissibility of evidence for an abuse of discretion. *Smalls v. Pittsburgh-Corning Corp.,* 843 A.2d 410, 413 (Pa.Super. 2004), *appeal denied,* 579 Pa. 704, 857 A.2d 680 (2004). To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. *Ettinger v. Triangle-Pacific Corp.,* 799 A.2d 95, 110 (Pa.Super. 2002), *appeal denied,* 572 Pa. 742, 815 A.2d 1042 (2003). For evidence to be admissible, it must be competent and relevant. *Ratti v. Wheeling Pittsburgh Steel Corp.,* 758 A.2d 695, 707 (Pa.Super. 2000), *appeal denied,* 567 Pa. 715, 785 A.2d 90 (2001). Evidence is competent if it is material to the issue to be determined at trial. *Id.* Evidence is relevant if it tends to prove or disprove a material fact. *Id.* at 707-08. Relevant evidence is admissible if its probative value outweighs its prejudicial impact. *Id.* at 708. The trial court's rulings regarding the relevancy of evidence will not be overturned absent an abuse of discretion. *Romeo v. Manuel,* 703 A.2d 530, 532 (Pa.Super.1997).

*American Future Systems,* 872 A.2d at 1212.

As previously noted, while the text messages introduced into evidence at trial were relevant and probative, they were clearly not impermissible hearsay since they were not offered to prove the truth of the matter asserted in them.

Furthermore, a careful review of Leach's numerous references in the Notes of Testimony to "hearsay evidence and observations of the confidential informant" fails to reveal any examples of actual hearsay. Leach's references all relate to questioning and testimony of the police officers which described their conduct with and physical observations of the confidential informant, but they do not identify any actual impermissible hearsay statements made by the confidential informant.

18

Finally, because there was a complete absence of evidence of inappropriate hearsay introduced at Leach's trial, the "curative instruction" which Leach alleges was issued by this Court could not possibly "bolster the weight and credibility of hearsay testimony coming from the informant" as Leach complains, and therefore this claim is also meritless.

CONCLUSION

In denying Leach's request to disclose the identity of the confidential informant who assisted in arranging the transactions involving the sale of controlled substances for which Leach was convicted, this Court recognized that the Commonwealth has a qualified privilege to withhold the identity of a confidential source which must be balanced with Leach's need for information that may be material to his defense. We concluded, however, that while the Commonwealth had demonstrated a significant interest in protecting the safety of the confidential informant, Leach had not established that his request for the confidential informant's identity was in any way material to the preparation of his defense or that this evidence would in any way contradict, rebut or impeach the overwhelming evidence of his guilt in this matter. Consequently, our denial of his request for disclosure was proper and just, and Leach's claims are meritless.

For the foregoing reasons, we recommend that this appeal be denied.

BY THE COURT:

CLYDE W. WAITE, J.

DATE: April 1, 2014

19

# COMMONWEALTH v. MICHAEL LEACH
# NO. 8065 of 2012

**COPIES SENT TO:**

Thomas C. Gannon
Deputy District Attorney
4th Floor
Bucks County Courthouse
55 East Court Street
Doylestown, Pennsylvania 18901

*Attorney for* COMMONWEALTH OF PENNSYLVANIA

Stuart Wilder, Esquire
PRATT, BRETT & LUCE, P.C.
68 East Court Street
P.O. Box 659
Doylestown, PA 18901

*Attorney for Appellant* MICHAEL LEACH

20