Matter of New York City Asbestos Litig. v Air & Liquid Sys. Corp. (2020 NY Slip Op 04437)





Matter of New York City Asbestos Litig. v Air & Liquid Sys. Corp.


2020 NY Slip Op 04437


Decided on August 6, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 6, 2020

Acosta, P.J., Friedman, Mazzarelli, Webber, JJ.


11191 190276/13

[*1] In re New York City Asbestos Litigation 
William E. Robaey, etc., et al., Plaintiffs-Respondents,
v
Air & Liquid Systems Corporation, etc., et al., Defendants, Federal-Mogul Asbestos Personal Injury Trust, etc., Defendant-Appellant. 
The Coalition for Litigation Justice, Inc., Amicus Curiae.


Hawkins Parnell & Young, LLP, New York (Robert B. Gilbreath and Alexander T. Green of counsel), for appellant.
Weitz & Luxenberg, P.C., New York (Alani Golanski of counsel), for respondents.
Crowell & Moring LLP, New York (Brian J. O'Sullivan of counsel), for amicus curiae.



Judgment, Supreme Court, New York County (Joan A. Madden, J.), entered March 1, 2019, upon a jury verdict, awarding plaintiff, upon remittitur (CPLR 5501[c]) and stipulation, $12 million for past pain and suffering, $4 million for future pain and suffering, $1 million for past loss of consortium, and $250,000 for future loss of consortium against defendant Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Mfg. Co. (Federal-Mogul), unanimously modified, on the facts, to vacate the awards for past pain and suffering and past loss of consortium, and order a new trial on those damages, unless plaintiff stipulates, within 30 days of entry of this order, to reduce the award for past pain and suffering to $5.5 million and the award for past loss of consortium to $650,000, and to entry of an amended judgment in accordance therewith, and otherwise affirmed, without costs.
In this asbestos case, Marlena Robaey plaintiff), who died after the trial of this action, testified that, working with her husband and co-plaintiff, she had been regularly exposed to visible dust from scraping and grinding engine gaskets over a period of years, from cleaning the family garage after each gasket change, and from taking her and her husband's dusty clothes into their laundry room to clean. Federal-Mogul's corporate representatives, as well as the various experts called by defendants at trial, testified that the gaskets contained anywhere from 50% to 85% asbestos, and plaintiffs' experts testified that dust from these products, if visible, necessarily exceeded current permissible levels and contained sufficient levels of asbestos to cause plaintiff's peritoneal mesothelioma.
On appeal, Federal-Mogul argues, among other things, that the evidence is legally insufficient to establish that plaintiff was exposed to sufficient levels of asbestos to cause her illness (i.e., specific causation) and that the jury's allocation of fault is and against the weight of the evidence. An expert's opinion on causation in a toxic tort case must set forth "a plaintiff's exposure to a toxin, that the toxin is capable of causing the particular illness (general causation) [*2]and that plaintiff was exposed to sufficient levels of the toxin to cause the illness (specific causation)" (Parker v Mobil Oil Corp., 7 NY3d 434, 448 [2006]). While a plaintiff need not quantify exposure levels precisely, "there must be evidence from which the factfinder can conclude that the plaintiff was exposed to levels of th[e] agent that are known to cause the kind of harm [claimed]" (Sean R. v BMW of N. Am., LLC, 26 NY3d 801, 808-809 [2016]).
Federal-Mogul correctly notes that exposure to asbestos dust is insufficient to establish specific causation, absent evidence that the extent of exposure and the quantity of asbestos in the dust were sufficient to cause the resulting illness (see Matter of New York City Asbestos Litig., 148 AD3d 233, 236 [1st Dept 2017], affd 32 NY3d 1116 [2018] ["Juni"] [the mere fact that "asbestos, or chrysotile, has been linked to mesothelioma, is not enough for a determination of liability against a particular defendant"]). However, both Federal-Mogul and the dissent overstate the holding in Juni, and fail to fully appreciate how the facts in Juni, more than any clarification of the law, guided its results. In Juni, the plaintiff's experts "testified only in terms of an increased risk and association between asbestos and mesothelioma," and "failed to either quantify the decedent's exposure levels or otherwise provide any scientific expression of his exposure level with respect to [the defendant's] products" (id. at 237)[FN1]. The plaintiff's expert conceded that she did not know how often the decedent had been exposed to the defendant's products.
The Juni opinion distinguished three prior decisions in which this Court found sufficient evidence of specific causation, explaining that in each case, experts had testified that the plaintiff or plaintiffs were exposed to dust that "necessarily contain[ed] enough asbestos to cause mesothelioma" (148 AD3d at 238-239, quoting Lustenring v AC & S, Inc., 13 AD3d 69, 70 [1st Dept 2004], lv denied 4 NY3d 708 [2005] [plaintiffs worked for long periods in clouds of dust raised by crushing gaskets and packing made of asbestos]; Matter of New York Asbestos Litig. [Marshall], 28 AD3d 255, 256 [1st Dept 2006] [plaintiffs were regularly exposed to dust from working with defendant's gaskets and packing, which were made of asbestos]; Penn v Amchem Prods., 85 AD3d 475, 476 [1st Dept 2011] [expert testified that visible dust created working with asbestos-containing dental liners "must have contained enough asbestos to cause (plaintiff's) mesothelioma"]). In contrast, plaintiff's experts' testimony in Juni "was equivocal at best, and was insufficient to prove that the dust to which Juni was exposed contained any asbestos, or enough to cause his mesothelioma" (Juni, 148 AD3d at 239 [emphasis added]).
In addition, in Juni, there was a failure to connect the decedent's work with exposure, and one of the plaintiff's experts (Dr. Markowitz) conceded that there was no research connecting garage mechanics to higher rates of mesothelioma and, more importantly, that the research on those allegedly exposed to asbestos due to friction work with brakes was weak, showing an association rather than a causal connection, and in only 1 of 22 studies (id. at 237). Another important factor in Juni was the Dr. Markowitz's concession that asbestos fibers in braking equipment are mixed with certain resins that prevent the asbestos from being respirable, that the heat caused by friction in brakes converted most asbestos to another mineral called forsterite, and that only 1% of the dust blown out from brake drums contain asbestos (id. at 237-238). The Court also found that in Juni, unlike other cases in which he testified, Dr. Markowitz failed to submit any scientific reports supporting his position (id. at 238).. Notably, the Court of Appeals affirmed Juni based on the "particular record" (32 NY3d at 1118).
Here, the experts did not merely testify as to only an increased risk. Dr. Schwartz testified that the visible dust from the gaskets at issue, which were conceded by defendants' expert to contain between 50% and 85% asbestos, 80% being "standard," necessarily contained [*3]several thousand times the "safe" amount of asbestos, and thus was causative of plaintiff's disease [FN2]. The dust was not created by the use of the product, as in Juni, but by the physical breaking down of the product itself. Under such circumstances, studies specific to mechanics scraping gaskets were not necessary, as the research on workers exposed to such dust was sufficient. In sum, the evidence here was akin to that proffered in Lustenring (133d 69), Marshall (28 AD3d 255), and Penn (85 AD3d 474), rather than that in Juni.
To be sure, in other cases upheld by this Court, the expert's testimony was more specific, opining as to specific amounts of asbestos in the air to which the plaintiffs were exposed (see e.g. Matter of New York City Asbestos Litig. [Murphy-Claggett], 173 AD3d 529 [1st Dept 2019] [plaintiff's industrial hygienist testified as to the amounts expected to have been in the air, 10 to 100 million fibers per cubic meter, relying on comparisons to airborne measurements in case studies of insulation workers who used similar products at similar exposure levels and developed mesothelioma, and plaintiff's medical expert testified that exposures at such levels over the course of 10 years of work would have caused, and did cause decedent's mesothelioma]; Ford v A.O. Smith Water Prods., 173 AD3d 602 [1st Dept 2019] [plaintiff's experts opined, given that the average concentration of airborne asbestos resulting from tearing out insulation is 8.9 fibers/cc, that plaintiff was exposed to amounts well above OSHA's 0.1 fibers/cc threshold]). However, nowhere in those decisions did this Court hold that such an expression of specific exposure levels was required to uphold the verdicts. To the contrary, other post-Juni decisions have upheld verdicts based upon the same type of evidence as was submitted here (see e.g. Nemeth v Brenntag N. Am., ___ AD3d ___, 2020 Slip Op 02261 [1st Dept 2020] [expert's opinion was based upon plaintiff's testimony that she used the specific talcum powder for 11 years, the dusty nature of talcum powder, proof presented at trial that the specific talcum powder was contaminated with asbestos, and a geologist's releasibility analysis of the powder and conclusion that it released asbestos fibers several orders of magnitude higher than a person would be exposed to by breathing ambient air]; Matter of New York City Asbestos Litig. [Sweberg], 143 AD3d 483, 484 [1st Dept 2016] [expert opined that plaintiff's exposure during four years of working where boilers containing materials of 15% asbestos were demolished, leaving clouds of dust in the air, was substantial, and that the dust necessarily contained enough asbestos to cause mesothelioma], lv dismissed 28 NY3d 1165 [2017]; Matter of New York City Asbestos Litig. [Hackshaw], 143 AD3d 485, 486 [1st Dept 2016] [visible dust caused by demolition of asbestos insulation and valves to which plaintiff was exposed necessarily contained enough asbestos to cause mesothelioma], affd 29 NY3d 1068 [2017]). The evidence adduced in Sweberg and Hackshaw is the same as the evidence adduced here, i.e., that the visible dust plaintiff was exposed to was necessarily in excess of 1% and sufficient to cause her disease. Accordingly, the jury's verdict is based on legally sufficient evidence and is not against the weight of the evidence (see Sweberg, 143 AD3d at 483; Hackshaw, 143 AD3d at 485; see also Cohen v Hallmark Cards, 45 NY2d 493, 498-499 [1978]).
The jury rationally found that plaintiff had not been exposed to asbestos manufactured, used, or sold by a number of settling and nonparty tortfeasors. Notably, it assessed liability against only those alleged tortfeasors the asbestos content of whose product was shown by evidence introduced by corporate representatives or defendants' own experts. It was the burden of Federal-Mogul to prove that the dust produced by those settling and non-party tortfeasors' products contained sufficient amounts of asbestos to cause plaintiff's disease, and it was within the jury's province to find that it did not meet that burden (see Murphy-Clagett, 173 AD3d at 529-530). The trial court properly ruled that certain expert witnesses could not bolster their testimony through other studies and treatises (see generally Rosario v New York City Health & Hosps. Corp., 87 AD2d 211, 214-215 [1st Dept 1982]; Cohn v Haddad, 244 AD2d 519, 520 [2d Dept 1997]).
We find that the damages awards for plaintiff's past pain and suffering and her husband's past loss of consortium deviate materially from what would be reasonable compensation (CPLR 5501[c]; see Matter of New York City Asbestos Litig., 121 AD3d 230 [1st Dept 2014], affd 27 NY2d 1172 [2016]; Lustenring v AC & S, Inc., 13 AD3d 69 [1st Dept 2004], supra). We thus remand for a new trial on those damages unless plaintiff stipulates to reduce the awards as indicated.
All concur except Friedman, J. who dissent
in a memorandum as follows




FRIEDMAN, J. (dissenting)


I respectfully dissent. For substantially the same reasons as those set forth in my recent dissent in Nemeth v Brenntag N. Am. (__ AD3d ___, 2020 NY Slip Op 02261, *11-21 [1st Dept 2020]), I would reverse and grant the posttrial motion by defendant Federal-Mogul Asbestos Personal Injury Trust, as successor to Felt Products Manufacturing Company (Fel-Pro), for judgment notwithstanding the verdict pursuant to CPLR 4404(a). In brief, plaintiffs' experts failed to offer — and admitted that they had not offered — a quantitative, scientific expression of the decedent's estimated exposure to asbestos from Fel-Pro's products (automotive gaskets), as required by Court of Appeals precedent that, as of today, remains binding on this Court (see Sean R. v BMW of N. Am., LLC, 26 NY3d 801 [2016]; Cornell v 360 W. 51st St. Realty, LLC, 22 NY3d 762 [2014]; Parker v Mobil Oil Corp., 7 NY3d 434 [2006]; see also Matter of New York City Asbestos Litig. [Juni], 148 AD3d 233 [1st Dept 2017], affd 32 NY3d 1116 [2018]). For example, one of plaintiffs' expert witnesses, Dr. David Schwartz, answered "No" when asked whether he had "attempted to do anything on a time-[weighted] average basis or a fiber CC year [fibers per cubic centimeter per year] cumulative dose for [the decedent] in her work solely with Fel-Pro gaskets." Dr. Schwartz also conceded that he was "not able to determine" the decedent's asbestos exposure from Fel-Pro products "relative" to her total asbestos exposure from all sources.[FN3]
It should be borne in mind that the decedent's relevant alleged exposure to asbestos from Fel-Pro products was restricted to helping her husband remove gaskets from his cars "once or twice . . . in a month" over a period of 12 years [FN4]. It should also be remembered that only about half of the gaskets involved were Fel-Pro products, that not all of the Fel-Pro gaskets contained asbestos, and that any asbestos that the gaskets did contain was of the less hazardous chrysotile variety. I further note that, in this Court's above-cited Juni decision, which was affirmed by the Court of Appeals, we held, contrary to the majority's apparent position in this case, that specific causation in an asbestos case cannot be proven merely by testimony that the injured person was exposed to "visible dust" from asbestos-containing products (see 148 AD3d at 239). Juni also rejected, as inconsistent with the Court of Appeals' decision in Parker, the theory, propounded by plaintiffs herein, that specific causation in an asbestos case may be established on the basis of a "cumulative exposure" theory, without quantifying, in some fashion, the level of asbestos exposure from a particular defendant's product (see id.).
As stated in my dissent in Nemeth, the majority's departure from the Court of Appeals' requirement of a scientific expression of the level of exposure to a toxin from a particular defendant's product cannot be justified by reliance on decisions of this Court (whenever they were decided) that appear to allow a plaintiff to prevail upon a lesser standard of proof. Even if the majority correctly anticipates that the Court of Appeals will overrule its existing precedents in this area, this Court remains bound by those precedents until the Court of Appeals actually does overrule them. Accordingly, it seems to me that I need not discuss the various decisions of this Court cited by the majority in support of its result. I note, however, that Juni cannot be successfully distinguished on the ground that the record in that case did not contain any scientific literature concerning the asbestos risk from the particular product at issue. The same lack is apparent here. In this case, plaintiffs' relevant expert, Dr. Steven Markowitz, admitted that he was unaware of "any epidemiological study that shows whether peritoneal mesothelioma is or is not linked to work with automotive
gaskets."
In view of the foregoing, I need not reach the remaining issues raised by Fel-Pro.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 6, 2020
CLERK



Footnotes

Footnote 1: One of the Juni experts conceded that more than 99% of the debris from friction brake wear, which allegedly caused the exposure, is not comprised of asbestos, and the other expert acknowledged that most epidemiological studies concluded that mechanics working on friction brakes are not at increased risk of mesothelioma (148 AD3d at 237).

Footnote 2:Felt Products' corporate representative testified that its head and manifold gaskets (used by plaintiff's husband) contained approximately 50% asbestos.

Footnote 3:According to plaintiffs' own evidence, during the relevant time period, the decedent was exposed each workday to asbestos from her husband's work clothes, which were so dusty from his work with insulation products (which were not Fel-Pro products) that the garments appeared to be covered with snow.

Footnote 4:In contrast, the occupational exposure limit for asbestos is based on "an eight (8)-hour time-weighted average" (29 CFR 1910.1001[c][1]), and claims based on occupational asbestos exposure typically involve exposure for eight hours per day, five days per week, during the relevant period of the injured person's employment.