Demetro v Dormitory Auth. of the State of N.Y. (2021 NY Slip Op 06650)





Demetro v Dormitory Auth. of the State of N.Y.


2021 NY Slip Op 06650


Decided on November 30, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 30, 2021

Before: Gische, J.P., Moulton, González, Kennedy, Scarpulla, JJ. 


Index No. 16277/06 Appeal No. 14357 Case No. 2019-05398 

[*1]Louis Demetro et al., Plaintiffs-Appellants-Respondents,
v
Dormitory Authority of the State of New York et al., Defendants-Respondents-Appellants, L.P. Gans Sales Company, Inc., et al., Defendants.
Dormitory Authority of the State of New York, et al., Third-Party Plaintiffs-Respondents,
v
Blue Diamond Sheet Metal, Inc., Third-Party Defendant-Respondent.
Dormitory Authority of the State of New York, et al., Third Third-Party Plaintiffs- Respondents,
v
L.P. Gans Sales Company, Inc., Third Third-Party Defendant- Respondent.
Martin Associates, Inc., Fourth Third-Party Plaintiff-Respondent-Appellant,
v
Analytical & Combustion Services, Inc., Fourth Third-Party Defendant-Respondent-Appellant.
Dormitory Authority of the State of New York et al., Fifth Third-Party Plaintiffs-Respondents-Appellants,
v
Johnston Boiler Company, Fifth Third-Party Defendant-Respondent.


Arnold E. DiJoseph, P.C., New York (Arnold E. DiJoseph, III of counsel), for appellants-respondents.
Perry, Van Etten, Rozanski & Kutner, LLP, Melville (Geoffrey H. Pforr of counsel), for Dormitory Authority of the State of New York, Bovis Lend Lease LMB, Inc. and Center Sheet Metal, Inc., respondents-appellants.
Shaub, Ahmuty, Citrin & Spratt, LLP, Lake Success (Christopher Simone of counsel), for The Cannon Corporation doing business as Cannon Design, respondent-appellant.
Catalano Gallardo & Petropoulos, LLP, Jericho (Michele R. Levin of counsel), for Martin Associates, Inc., respondent-appellant.
Lewis Johs Avallone Aviles, LLP, Islandia (Jordan S. Palatiello of counsel) for Analytical & Combustion Services, Inc., respondent appellant.
Hoagland, Longo, Moran, Dunst & Doukas, LLP, New York (Michael T. Kearns of counsel), for Johnston Boiler Company, respondent.



Order, Supreme Court, Bronx County (Doris M. Gonzalez, J.), entered on or about October 29, 2019, which granted the various CPLR 4404(a) motions to the extent of setting aside the verdict, and ordering a new trial, as to liability against defendant Cannon Corporation, defendant/fifth third-party plaintiff Center Sheet Metal (CSM), and fourth third-party defendant Analytical & Combustion Services, Inc. (ACS), as to apportionment of fault among said parties and defendant/fifth third-party plaintiff Bovis Lend Lease LMB, Inc. (Bovis) and defendant/fourth third-party plaintiff Martin Associates, Inc. (Martin), and as to past and future pain and suffering and past loss of services, unless plaintiffs stipulated to reduce the awards for past pain and suffering from $1.5 million to $700,000, future pain and suffering from $1.5 million to $1 million, and past loss of services from $500,000 to $200,000, and denied defendant/fifth third-party plaintiff Dormitory Authority of the State of New York (DASNY), Bovis, and CSM's motion to extend their time to move, in effect, for judgment as a matter of law on DASNY and Bovis's contractual indemnification cross claims against Cannon and Martin, and, upon granting the extension, for said judgment, unanimously modified, on the law and the facts, to grant ACS's motion to reinstate the jury's finding that ACS was not negligent and dismiss the fourth third-party complaint and cross claims, and to reinstate the jury awards for past and future pain and suffering and past loss of services, and otherwise affirmed, without costs.
In this personal injury action plaintiff Louis Demetro (the injured plaintiff) was hit by an angle iron that fell from boiler exhaust ductwork in the boiler room at Jacobi Medical Center (Jacobi), owned by defendant DASNY.
Jacobi paid for the installation of four new boilers in 2003 in connection with a project to modernize its inpatient and emergency facilities. There were a number of defendants and third-party defendants that were responsible for aspects of the design and construction of the boiler system. As is pertinent to this appeal, DASNY retained Cannon as the architect and the design engineer of the project. Cannon provided, among other things, performance specifications for the boiler system to Martin, the prime heating, ventilation, and air conditioning contractor. Cannon also reviewed whether the contract drawings, specifications and approved shop drawings conformed with the design intent. Cannon's responsibilities also included making inspections to verify compliance. DASNY retained Bovis as the construction manager for project. Martin retained CSM as the sheet metal contractor to reinforce the boilers' cleanout ports. ACS performed "start-up services" for the four new boilers as an exclusive sale and service representative for the boiler manufacturer and designer Johnston Boiler Company (Johnston).
The boiler system included a "breeching system," designed to vent combustible materials[*2], consisting of exhaust ductwork connected to a chimney. The breeching system included cleanout ports with covers that afforded access to a horizontal portion of the ductwork.
Soon after installation, and for years thereafter, the boiler system vibrated when more than one boiler was in operation. The vibrations sometimes caused a cleanout port cover to become dislodged and fall to the floor below. Martin hired CSM to install angle irons to brace the covers and keep them in place. Jacobi and the contractors were baffled as to the cause of the vibrations, and although many attempts were made to stop the vibrations, the problem was not resolved until more than four years after the accident.
In a prior appeal in this case, we modified an order that denied Cannon's motion for summary judgment dismissing, inter alia, the complaint as against it to grant the motion insofar as the complaint was "based on the alleged improper sizing of the breeching system or an improper connection between the breeching system and the chimney stack" (Demetro v Dormitory Auth. of the State of N.Y., 170 AD3d 437, 438 [1st Dept 2019] [Demetro I]). We did so because there was "no evidence that defendant Cannon negligently sized the system to accommodate three boilers in operation so that it would be held liable for plaintiff's injuries" (id.) Unbeknownst to us, at a trial nine months earlier, the jury was presented with proof concerning two different theories of Cannon's liability, i.e. negligent design of the breeching system, and negligent performance of its architectural/engineering oversight duties. The jury's verdict, at the conclusion of that trial, spanning March 6 - May 16, 2018 and involving 10 defendants/third-party defendants, was that Cannon was negligent and that its negligence was a substantial factor in causing the injured plaintiff's accident. The jury apportioned 25% liability to Cannon. The extensive testimony heard by the jury did not distinguish between the two theories, both of which were argued. The jury was simply asked to decide whether Cannon was negligent and whether its negligence was a proximate cause of the injured plaintiff's injuries.
None of the parties' counsel notified this Court of the verdict while the appeal was still pending. Consequently, this Court's March 7, 2019 order deciding the appeal, and holding that although as a matter of law, Cannon cannot be held liable for negligent design, there are issues of fact whether Cannon was otherwise negligent, was rendered only after the jury's verdict. In deciding the parties' posttrial motions, the court, based upon our order deciding the prior appeal, correctly set aside the liability verdict against Cannon and ordered a new trial on liability, because evidence of Cannon's negligence in designing the breeching system had been adduced at trial.
Regardless of whether the verdict after trial rendered Cannon's appeal from the denial of summary judgment moot, the issue of whether Cannon could [*3]be held liable on a negligent design theory was decided adversely to Cannon by post trial order and can be reviewed and resolved on this appeal (see DeJesus v Moshiashvili, 176 AD3d 649 [1st Dept 2019]). While our prior order is not strictly law of the case (Matter of Part 60 RMBS Put-Back Litig., 195 AD3d 40 [1st Dept 2021]), it is still a correct ruling that, as a matter of law, there was no basis to hold Cannon liable on a negligent design theory based on the evidence that was submitted on the motion for summary judgment (see Engel v Aponte, 51 AD2d 989, 990 [2d Dept 1976]). Because the verdict sheet only asked that the jury consider, in general, Cannon's liability for the injured plaintiff's injuries, we cannot discern whether the jury's finding of liability was based upon negligent design, a legally impermissible basis, or another permissible theory of negligence (see Landau v Balbona Rest. Corp., 168 AD3d 424, 425 [1st Dept 2019]).
The court properly set aside the jury's findings that CSM was negligent and that its negligence was not a substantial factor in causing the injured plaintiff's accident and ordered a new trial as to CSM's liability, because the issues of fault and proximate cause with respect to CSM were so inextricably interwoven that it was logically impossible for the jury to find one but not the other (see KBL, LLP v Community Counseling & Mediation Servs., 123 AD3d 488, 489 [1st Dept 2014]). CSM denied installing the angle iron that hit the injured plaintiff (which was marked with its "Job Number 50") but admitted that it installed all the other angle irons. To reconcile the jury's findings, CSM makes the meritless argument that the jury could have rationally determined that CSM was negligent because it failed to secure its jobsite materials, but that such failure was not a substantial factor in causing the accident because some "other actor" (for which there was no evidence) found and installed the angle iron that hit the injured plaintiff.
However, the court improperly set aside the jury's finding that ACS was not negligent. As to ACS we cannot say that "there is simply no valid line of reasoning and permissible inferences which could possibly lead [a rational jury] to the conclusion reached by the jury on the basis of the evidence presented at trial" (Cohen v Hallmark Cards, Inc., 45 NY2d 493, 499 [1978]).
The evidence at trial demonstrated that Martin subcontracted with ACS as an exclusive sales and service representative for Johnston to perform the "start-up services" for four new boilers.[FN1] Shortly after the boilers were installed, they vibrated when more than one boiler was in operation. The jury heard testimony from ACS's owner that ACS contacted Johnston after it could not stop the vibrations by adjusting the boilers' fuel and air ratios. According to the owner's testimony, ACS did not want to reconfigure the gas guns on "brand new boilers" absent "specific instructions" from Johnston. Notably, ACS's expert Frank [*4]Schwalje testified that Johnston's manual specifically provided that Johnston had to approve any modification to the gas guns. Therefore, ACS's owner testified that ACS called Johnston and the manufacturer made a service call in November 2004. Johnston modified the boilers' burners by installing plugs into the gas guns of each boiler, but the vibrations continued. Martin's expert testified that over four years after the injured plaintiff's accident, Bill Lower of nonparty Combustion Services Inc. (CSI), another Johnston-authorized representative, fixed the vibration problem by, among other things, plugging additional holes in the boilers' gas guns.[FN2]
The jury's finding that ACS was not negligent was not against the weight of the evidence. The court incorrectly concluded that there was no valid line of reasoning for the jury to find that ACS was not negligent because Lower corrected the problem by, among other things, reconfiguring the gas guns. To the contrary, the jury could have rationally concluded that the vibrations were resolved only when CSI modified the gas guns and that the fact that CSI did so did not prove that ACS should have done so as part of it start-up responsibilities. In addition, the jury could have reasonably concluded that because ACS was not permitted to modify the gas guns absent Johnston's approval, ACS discharged its start-up responsibilities by contacting Johnston, who modified the boilers' burners by installing plugs into four of the gas guns. Thus, we need not reach ACS's argument that the court erroneously determined that Demetro I foreclosed it from relying on trial evidence that the vibrations arose from the design of the breeching system for which it was not responsible.
The jury's verdict was not otherwise against the weight of the evidence (see generally Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995]). The testimony and other evidence adduced in this two-month-long trial raised questions of fact as to each defendant's liability that were properly left for the jury to resolve. That some evidence may have supported each party's position with regard to liability does not mean either that the jury exceeded its province in determining which evidence to accept and which to reject or that its verdict was against the weight of the evidence (see e.g. Baillargeon v Kings County Waterproofing Corp., 180 AD3d 635, 636 [2d Dept 2020]).
The jury's awards for past pain and suffering and loss of services (each about 12 years) and future pain and suffering (20 years) did not deviate materially from what would be reasonable compensation (CPLR 5501[c]; see Williams v City of New York, 105 AD3d 667 [1st Dept 2013]; Vukovich v 1345 Fee LLC, 72 AD3d 496 [1st Dept 2010]; Lewis v Port Auth. of N.Y. & N.J., 8 AD3d 205 [1st Dept 2004]; Kayes v Liberati, 104 AD3d 739 [2d Dept 2013]; see also Matter of New York City Asbestos Litig., 186 AD3d 401 [1st Dept 2020]; Loja v Lavelle, 132 AD3d 637 [2d Dept 2015]). To the extent an argument [*5]is made that a surveillance video shows that the injured plaintiff was exaggerating his injuries, the video is not included on the three CDs that we reviewed and therefore, cannot be considered (see Amezquita v RCPI Landmark Props., LLC, 194 AD3d 475, 475-476 [1st Dept 2021]).
The injured plaintiff's special damages were established at trial with reasonable certainty (see generally e.g. Huff v Rodriguez, 45 AD3d 1430, 1433 [4th Dept 2007]). Plaintiffs' evidence "was not purely speculative, and the jury was entitled to credit that testimony" to the extent it did (Munzon v Victor at Fifth, LLC, 161 AD3d 1183, 1186 [2d Dept 2018] [internal citations omitted]). To the extent plaintiffs argue that the award for future lost earnings should have been made over the rest of the injured plaintiff's life, rather than the rest of his expected work life, the award comported with the trial court's charge (see NY PJI 2:290), and it was within the jury's province to follow the charge of work life expectancy and to reject plaintiffs' evidence that the injured plaintiff would work for the rest of his life (see Stewart v New York City Tr. Auth., 82 AD3d 438, 441 [1st Dept 2011], lv denied 17 NY3d 712 [2011]; Lolik v Big V Supermarkets, 266 AD2d 759, 761 [3d Dept 1999]; Blyskal v Kelleher, 171 AD2d 718, 719 [2d Dept 1991]).
DASNY, Bovis, and CSM failed to establish good cause for their delay in moving for judgment as a matter of law on DASNY and Bovis's contractual indemnification cross claims against Cannon and Martin (see CPLR 2004; Casey v Slattery, 213 AD2d 890, 891 [3d Dept 1995]). Since at the time of this motion for an extension of time they had already moved pursuant to CPLR 4404(a) to set aside the verdict on various grounds, this motion also violated the rule against successive posttrial motions (see CPLR 4406).
We have considered the parties' remaining arguments for affirmative relief and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 30, 2021



Footnotes

Footnote 1:The jury found that Johnston was not negligent.

Footnote 2:Bill Lower's deposition testimony was read into the record, over ACS's objection. Because we reinstate the jury's finding that ACS was not negligent, we need not reach ACS's argument that Lower's testimony was improperly admitted at trial as a subsequent remedial repair.